SHEARSON LEHMAN BROTHERS, INC., Plaintiff and Counterdefendant-Appellant, v. JON P. HEDRICH *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (1st Division)   No. 1—92—1426

Opinion filed August 22, 1994.

Neal, Gerber & Eisenberg, of Chicago (Thomas M. Knepper and James H. Bowhay, of counsel), for appellant.

McBride, Baker & Coles, of Chicago (Thomas P. Ward, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of a dispute between Shearson Lehman Brothers, Inc. (Shearson), and three former employees, Daniel P. Miller, Jon P. Hedrich, and Donald C. Owen (defendants). Defendants commenced an arbitration proceeding against Shearson in front of a three-arbitrator panel convened by the National Association of Securities Dealers, Inc. (NASD), regarding, *inter alia*, the amount of money owed to them under Shearson's "Executive and Select Employees Deferred Compensation Plan" (deferred compensation plan). The NASD panel awarded each defendant a lump sum as the amount owed under the deferred compensation plan. Shearson brought an action in the circuit court to modify, correct, or partially vacate the award. Defendants filed a counterclaim seeking to have the award confirmed and entered as rendered. The circuit judge denied Shearson's petition to vacate or modify, confirmed defendants' award and entered judgment thereon. On appeal, Shearson contends: (1) that the circuit court erred in concluding that the arbitrators had not made a "miscalculation of figures" in arriving at the award; and (2) that, alternatively, the award should have been vacated because the arbitrators exceeded their powers by disregarding the unambiguous contractual provisions.

Each defendant had been employed by the Chicago office of Shearson, a securities brokerage firm, for many years. Defendants alleged in their complaints to the NASD arbitration board that between 1986 and 1988 the year-end bonuses which Shearson paid to them were substantially less than the amounts to which they were each entitled. They alleged that they complained to Shearson about this underpayment, but their protests were rejected. They further alleged that when it became clear to Shearson that defendants were determined to take their compensation disputes to arbitration, Shearson terminated defendants' employment. Hedrich was fired on September 25, 1989. Owen was fired on October 1, 1989. Miller was fired on October 16, 1989.

After their terminations, defendants commenced arbitration proceedings before an NASD arbitration panel. Defendants' third amended statements of claims upon which their disputes were submitted to the NASD arbitrators contained four counts for relief. Count I alleged a breach of contract by underpayment of compensation for the years 1986 through 1988. The NASD arbitration panel found for defendants on count I and Shearson paid to defendants all

count I damages. Shearson has not appealed this determination and, therefore, these aspects of the award are not at issue. Count II alleged that defendants were owed additional compensation for the partial year they worked in 1989 prior to being fired. Defendants' claims in count II for 1989 compensation were "denied and dismissed in their entirety." Defendants have not appealed this determination and it is not before us. Count III alleged that defendants were wrongfully discharged and requested "lost future earnings." These count III claims were also "denied and dismissed in their entirety." Defendants have not appealed the dismissal of their count III claims. Finally, in count IV defendants alleged that, because they were wrongfully discharged, they should be considered "fully vested" under the company's deferred compensation plan. The NASD arbitrators found Shearson liable to defendants on their count IV claims and ordered Shearson to pay Hedrich $207,264, Miller $207,264, and Owen $105,813.

Under Shearson's deferred compensation plan, a fully vested employee would be entitled to an amount equal to his contributions to the plan plus interest at a rate of 11% per annum. An employee whose employment was terminated prior to the effective vesting date, however, was only entitled to an amount equal to his contributions plus 5% interest per year. The effective date of vesting for each defendant was September 25, 1990. Paragraph 3 of each defendant's deferred compensation agreement provided:

"3. *Payments Prior to Vesting or Effective Date.*

[I]f prior to September 25, 1990 Employee ceases to be an employee of the Employer or of an affiliate for any reason whatsoever (including termination of employment by Shearson with or without cause) *** (b) Shearson shall have no obligation of any kind hereunder except to pay Employee *** an amount equal to the amount of compensation theretofore deferred and/or withheld *** plus interest thereon at an annual rate equal to the lesser of 5% or the weekly 90-day Treasury Bill auction rate (on a discounted basis) averaged over a 12 month period ending on the date of payment. Such interest shall be compounded annually on a calendar year basis and shall be credited with respect to the average daily balance in the deferred compensation account each calendar year."

At the time of their terminations, each defendant had made contributions to the deferred compensation plan in the following amounts: Hedrich had contributed $140,000, Miller had contributed $80,000, and Owen had contributed $80,000. If the "fully vested" 11% compounded annual interest rate were added to each defendant's contributions, each defendant would have received a *greater* sum

than what was awarded to them by the NASD arbitrators. On the other hand, if the "unvested" 5% compounded annual interest rate were added to each defendant's contributions, each defendant would have received *less* than the amount awarded. Specifically, at the 5% rate, Hedrich would be entitled to $186,928.76, Miller would be entitled to $102,406.10, and Owen would be entitled to $102,753.24. (Shearson's argument and, therefore, our analysis, assumes that, if plaintiffs are not to be considered "fully vested," then their compensation should be based on their contributions plus 5% interest and not the Treasury Bill rate.)

Since the NASD arbitrators clearly did not utilize either the "fully vested" 11% interest rate or the "unvested" 5% interest rate in calculating the amounts owed to defendants, Shearson filed an action in the circuit court seeking to modify, correct or, in the alternative, to vacate the arbitration award on the count IV claims. Defendants filed a counterclaim seeking to confirm the count IV arbitration awards. The circuit judge denied Shearson's petition, confirmed the award, and entered judgment thereon. Shearson filed a timely appeal to this court.

Shearson argues that the damages the NASD arbitration panel awarded to defendant bear no relation whatsoever to the unambiguous mathematical formulas provided in the defendants' deferred compensation agreements. Shearson contends, therefore, that we should modify or correct this clear mathematical miscalculation and enter an award for defendants in an amount equal to their contributions plus 5% interest. If the award is not a "mathematical miscalculation," however, Shearson asserts alternatively that we should vacate the award because the arbitrators exceeded their powers by disregarding the unambiguous contractual provisions. Shearson maintains that, under both the Uniform Arbitration Act (UAA) (Ill. Rev. Stat. 1991, ch. 10, par. 101 *et seq.* (now 710 ILCS 5/1 *et seq.* (West 1992))) and the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (1982)), an arbitration award should be vacated when the arbitrators "interpret" unambiguous contractual language differently from its unambiguous meaning. Shearson argues that the arbitration panel did not have the authority to substitute a "pay-out" provision different from that contained in the defendants' deferred compensation agreements and that no possible construction of the deferred compensation agreements supports the damages awarded.

Defendants argue, on the other hand, that when parties agree to arbitrate their disputes before parties they have chosen, and the award "is within the submission," courts should not set aside the award "for error either in law or fact" (*Burchell v. Marsh* (1855), 58

U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99), as long as the interpretation of the agreements "is a reasonably possible one." (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 574 N.E.2d 636; *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 389 N.E.2d 1181.) Defendants assert that the dispute over the amount of deferred compensation owed to them was duly submitted to the NASD panel because construction of the deferred compensation agreements was within the submission and arbitration agreements. Defendants contend that, since parties to arbitration agree that all questions as to law and fact are within the authority of the arbitrators, the arbitrators could not have exceeded their powers.

Shearson counters that defendants' argument, in effect, is that no matter how clear an arbitration panel's error and no matter how far from the contract provisions the panel may stray, its awards are beyond judicial review. Shearson asserts that such is not the law and to affirm the circuit court's decision here would be to render the arbitration statutes "superfluous and meaningless."

■ Judicial review of arbitration awards is more limited than review of a trial court's decision. (*Hough v. Osswald* (1990), 198 Ill. App. 3d 1056, 1057, 556 N.E.2d 765, 766.) However, under both the Uniform Arbitration Act (UAA) (Ill. Rev. Stat. 1991, ch. 10, par. 112(a)(3)(now 710 ILCS 5/12(a)(3) (West 1992))) and the Federal Arbitration Act (FAA) (9 U.S.C.S. § 10(a)(4) (Law. Co-op. Supp. 1994)), a reviewing court will vacate an arbitration award if the arbitrators "exceeded their powers." Additionally, under both the UAA (Ill. Rev. Stat. 1991, ch. 10, par. 113(a)(1) (now 710 ILCS 5/13(a)(1) (West 1992))) and the FAA (9 U.S.C.S. § 11(a) (Law. Co-op. 1987)), if the arbitrators made an evident miscalculation of figures in arriving at the award, the reviewing court will modify or correct the award.

■ In construing the "instruments of submission to arbitration," the arbitrators only have authority to decide those issues which the parties have agreed to arbitrate. (*Rauh*, 143 Ill. 2d at 387, 574 N.E.2d at 641.) If the arbitrators interpret the contract and issues submitted to them, then the parties are bound by that decision as long as the interpretation is "a reasonably possible one." (*Rauh*, 143 Ill. 2d at 392, 574 N.E.2d at 643.) A reviewing court will not set aside an arbitrator's award even though it is clear the arbitrators made gross errors of judgment in law or gross mistakes of fact "unless the mistakes or errors are apparent upon the face of the award." (*Rauh*, 143 Ill. 2d at 393, 574 N.E.2d at 644.) A party can also complain if the arbitrators exceed their authority and do not interpret the contract, "that is, if they disregard the contract and implement their own notions of what is reasonable and fair." (*Hill v. Norfolk &*

*Western Ry. Co.* (7th Cir. 1987), 814 F.2d 1192, 1195; see *Rauh*, 143 Ill. 2d 377, 574 N.E.2d 636.) The arbitrators' authority is limited by the unambiguous contract language. (*Inter-City Gas Corp. v. Boise Cascade Corp.* (8th Cir. 1988), 845 F.2d 184, 187.) The ultimate award must be "grounded on the parties' contract" and arbitrators do not have the authority to ignore plain language and alter the agreement. *Inter-City*, 845 F.2d at 187-88.

■ Under the above-stated principles, we believe that the NASD arbitrators exceeded their authority in awarding defendants an amount which was clearly not based upon the precise and unambiguous mathematical formulas provided in the deferred compensation agreements. The amount of deferred compensation to which each defendant was entitled was not, as defendants argue, the issue submitted to the arbitration panel. The arbitration panel was presented with the question of whether defendants were "wrongfully discharged" and, based on its resolution of this issue, the panel was supposed to decide the status of defendants, *i.e.*, whether defendants should be treated as "fully vested" or "unvested" for purposes of determining their compensation under the deferred compensation plan. If the arbitrators determined that defendants were "wrongfully discharged," defendants clearly should have been treated as though they were "fully vested" and each would have been entitled, according to the unambiguous provisions of the deferred compensation agreements, to an amount equal to that which he contributed to the plan plus 11% compounded annual interest. This amount would have been greater than the amount awarded by the arbitration panel. If the arbitrators found that defendants were not "wrongfully discharged," then they were not vested under the deferred compensation agreements and each would have been entitled to the amount he contributed to the plan plus 5% compounded annual interest. This amount would have been less than the amount awarded by the panel. Once defendants' status was determined, however, the amount of their award was merely a matter of applying the unambiguous mathematical calculations provided in the agreements.

It is clear that the arbitrators impermissibly ignored the unambiguous contract language and implemented their own notion of what would be reasonable and fair. Count III alleged that defendants were "wrongfully discharged." The panel "denied and dismissed" this claim in its entirety. Count IV, however, alleged that defendants should be treated as "fully vested" *because they were "wrongfully discharged."* The panel found Shearson liable on this count and awarded the above-mentioned mysteriously calculated amounts. Since the arbitrators dismissed defendants' allegations of

"wrongful discharge" which were contained in count III and thus found that defendants were not "wrongfully discharged," it is inconsistent for them to have found Shearson liable under count IV, which was premised upon such "wrongful discharge" and, necessarily, the allegations presented in count III. Therefore, count IV of defendants' statements of claims also should have been "denied and dismissed in their entirety" and defendants, having left Shearson's employment prior to their vesting date, should simply have been awarded the amounts of their contributions plus 5% compounded annual interest.

We find further support for our conclusion in the fact that, under the present Illinois law, defendants have not stated a claim for which relief could be granted. An employee at will may be discharged with or without cause and for good reason, bad reason, or no reason. (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 67, 485 N.E.2d 359, 360; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128-29, 421 N.E.2d 876, 878.) Such a terminated employee has a "wrongful discharge" claim only if the reason for his discharge violates "clearly mandated public policy." (*Price*, 109 Ill. 2d at 67, 485 N.E.2d at 360.) Our supreme court has stated that, in order to be a subject of public policy as opposed to a purely personal matter, "a matter must strike at the heart of a citizen's social rights, duties, and responsibilities." (*Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878-79.) Matters of public policy which justify a finding of "wrongful discharge" include terminating an employee for filing a workers' compensation claim (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357), for exercising the civic right and duty of serving on a jury, for attending court when subpoenaed, for refusing to commit perjury, or for refusing to violate a statute or law. (*Palmateer*, 85 Ill. 2d at 128-31, 421 N.E.2d at 878-79 (and the cases cited therein).) Purely private matters which do not justify a "wrongful discharge" action include terminating an employee for submitting an insurance claim under the health insurance plan provided by the employer (*Price*, 109 Ill. 2d at 68-69, 485 N.E.2d at 361) or for attempting to examine the company's books in the employee's capacity as a shareholder. (*Palmateer*, 85 Ill. 2d at 131, 421 N.E.2d at 879.) Defendants' allegation that they were fired because they were going to arbitrate their compensation disputes clearly does not "strike at the heart of a citizen's social rights, duties, and responsibilities," but is rather a matter "of private and individual grievance." *Price*, 109 Ill. 2d at 69, 485 N.E.2d at 361.

We recognize that, under the standard of review of administrative determinations, we would not reverse a clear finding of "wrongful discharge" even if legally incorrect and that in view of the NASD

panel's inconsistent findings on counts III and IV, it could be argued that the panel's findings are unclear and that we cannot assume that it found that Shearson did not "wrongfully discharge" defendants. However, we see no reason to assume that the Board may have intended to find Shearson guilty of "wrongful discharge" and remand for the purpose of giving the panel a second chance to misapply what is clear Illinois law.

Therefore, since the arbitration panel's award was in excess of its authority, we vacate the award as to count IV and order that Shearson pay each defendant an amount equal to his contributions plus interest thereon at an annual rate of 5% as provided in the deferred compensation agreements. According to the record, the following apparently are the specific amounts defendants are entitled to at the 5% rate: Hedrich is entitled to $186,928.76, Miller is entitled to $102,406.10, and Owen is entitled to $102,753.24.

Accordingly, for the foregoing reasons, we vacate the NASD arbitration panel's award.

Vacated.

O'CONNOR and MANNING, JJ., concur.