FOURTH DIVISION
March 9, 2006

No. 1-05-0284


NICHOLAS W. GALASSO AND JEFFREY D.  )
GALASSO,                            )          Appeal from the
                                    )     Circuit Court of
      Plaintiffs-Appellees,         )        Cook County.
                                    )
   v.                               )
                                    )
KNS COMPANIES, INC.,                )
                                    )
   Defendant-Appellant.             )       Honorable
                                    )     Thomas P. Quinn
                                    )     Judge Presiding.
                                    )

      PRESIDING JUSTICE QUINN delivered the opinion of the court:

      Defendant KNS Companies, Inc. (KNS), appeals from an order

of the circuit court of Cook County affirming an arbitration

award in favor of plaintiffs Nicholas W. Galasso (Nicholas) and

Jeffrey D. Galasso (Jeffrey).  On appeal, defendant contends that

the arbitrator exceeded his authority by determining the

existence of employment contracts and awarding damages beyond

those provided for in the alleged contracts.  Defendant also

contends that the circuit court should have modified the

arbitrator's determination where it contained evident

miscalculations of figures and mistakes in descriptions.  For the

following reasons, we affirm.

# I.  Background

KNS is a closely held Illinois corporation with 24 shareholders.  KNS is in the business of producing interior linings for steel drums and pails.  KNS' board of directors observed informal procedures.  Nicholas and Jeffrey are father and son, respectively, and were employed by KNS until 2002.

Nicholas was president and a director of KNS.  Nicholas was primarily responsible for the day-to-day operations of KNS, and through informal relations with members of the board of directors and shareholders, operated KNS with little or no supervision. Jeffrey was employed by KNS and held the office of executive vice president and treasurer.  He was elected treasurer in an informal action by the board of directors on December 5, 1999.  Prior to December 5, 1999, Jeffrey was not an officer of KNS.  Jeffrey's responsibilities included full charge of the plant, including plant personnel, manufacturing, inventory, purchasing and lab technical projects.

On April 26, 2002, KNS relieved Nicholas of his duties as president of KNS.  KNS's board of directors agreed to compensate Nicholas as president emeritus of KNS from April 26, 2002, through December 2002.  After being named president emeritus, on May 14, 2002, Nicholas was suspended by KNS from employment pending an audit.  Jeffrey was also suspended on the same date,

pending an audit.  In June 2002, pursuant to their employment agreements, Nicholas and Jeffrey each filed a demand for arbitration with the American Arbitration Association (Association).  Nicholas and Jeffrey alleged that KNS breached their employment contracts by terminating their employment and failing to pay wages and benefits due under their employment contracts.  KNS denied that Nicholas and Jeffrey had valid employment contracts during the arbitration proceedings.

The record contains two documents entitled "Employment Agreement" between KNS and Nicholas, and between KNS and Jeffrey.  These agreements also contain an arbitration clause, which provides:

> "Any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any Court having jurisdiction thereof."

Following seven days of testimony, on July 14, 2004, the arbitrator found in favor of Nicholas and Jeffrey and awarded various monetary awards.  The arbitrator specifically found that Nicholas and Jeffrey each had an employment contract and agreement with KNS, which expired in December 2002.  The arbitrator found that neither Nicholas nor Jeffrey breached any of the terms or conditions of their employment contracts and

agreements with KNS, and each of them devoted his best efforts to the business interests of KNS.  The arbitrator determined that KNS was liable to Nicholas for the following amounts: $194,000 for unpaid compensation for the period May 1, 2002, through December 7, 2002; $3,500 in business expenses; $2,666.74 for medical insurance for the period from August 1 through December 8, 2002; and $3,263.55 for medical expenses from May 2002 through December 8, 2002.  The arbitrator determined that KNS was liable to Jeffrey for the following amounts: $101,000 for unpaid compensation for the period from May 1, 2002, to December 7, 2002, and $7,968.40 for medical expenses and insurance.  The arbitrator also determined that Nicholas and Jeffrey were entitled to reasonable attorney fees in the amount of $80,000. The arbitrator further determined that KNS was liable for the administrative fees and expenses of the Association and the arbitrator.  Accordingly, the arbitrator directed KNS to pay Nicholas and Jeffrey $24,900 for amounts previously advanced to the Association.

On July 19, 2004, Nicholas and Jeffrey filed an action in the circuit court to confirm the final award of the arbitrator. KNS filed a motion to vacate or modify the arbitrator's award. On December 21, 2004, the circuit court entered an order affirming the arbitrator's final award and denying KNS's motion.  KNS appeals from that order.

II.  Analysis

1-05-0284

    A.  KNS's Claim That the Arbitrator Lacked the Authority to

            Determine the Existence of Employment Contracts

    KNS first contends that the circuit court should have vacated the arbitrator's award where the arbitrator exceeded his authority.  Relying on <u>Kilianek v. Kim</u>, 192 Ill. App. 3d 139 (1989), KNS argues that the arbitrator had no authority to determine whether a contract existed in this case because it was an issue of law determinable only by the courts.

    However, our supreme court addressed this issue in <u>Jensen v. Quik International</u>, 213 Ill. 2d 119 (2004).  In <u>Jensen</u>, the plaintiff sought to rescind a franchise agreement with the defendant on the grounds that the agreement violated the Franchise Disclosure Act of 1987 (Franchise Act) (815 ILCS 705/5 (West 2002)), because the defendant franchisor was not registered with the Attorney General's office at the time of sale.  <u>Jansen</u>, 213 Ill. 2d at 120-21.  The defendant sought to stay any litigation on the agreement pending arbitration pursuant to an arbitration clause contained therein; however, the circuit court denied the motion. <u>Jensen</u>, 213 Ill. 2d at 121.  The appellate court affirmed the denial, holding that because compliance with the Franchise Act was a condition precedent to an enforceable contract, the agreement and the arbitration clause were not binding because the contract did not exist if the Franchise Act had been violated.  <u>Jensen</u>, 213 Ill. 2d at 121.  Therefore, the appellate court found, the question of whether the Franchise Act had been violated had to first be

1-05-0284

determined in a court of law prior to enforcement of the arbitration clause. Jensen, 213 Ill. 2d at 121-22. Our supreme court disagreed and reversed the trial and appellate courts.

In its decision, the supreme court concluded that registration with the Attorney General's office was not a condition precedent to an enforceable franchise agreement. The Franchise Act provides that in the case of a violation of the statute, the available remedies are rescission and damages. The Franchise Act does not provide that agreements entered into in violation of the Act are invalid and unenforceable. Jensen, 213 Ill. 2d at 127. Our supreme court also noted that Illinois public policy favors arbitration as a means of resolving disputes. Jensen, 213 Ill. 2d at 128-29. It concluded that if a party where allowed to avoid arbitration simply by alleging that no contract existed, it would be undermining that policy, as "almost any plaintiff can find some theory or claim upon which to allege that no contract existed, thereby avoiding arbitration." Jensen, 213 Ill. 2d at 128-29. Therefore, the supreme court found that the issue of whether the statute was violated, thereby entitling the plaintiff to rescission of the franchise agreement, was arbitrable under the arbitration clause of the franchise agreement.

In Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 156 L. Ed. 2d 414, 123 S. Ct. 2402 (2003), the United States Supreme Court considered the petitioner's argument that the arbitration clause in question precluded class arbitration. The Supreme

Court noted that the parties agreed to arbitrate " 'all disputes, claims or controversies arising from or relating to this contract or the relationships which result from this contract.' " Bazzle, 539 U.S. at 451, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407. The Supreme Court determined that "the dispute about what the arbitration contract in each case means" is a dispute "relating to this contract" and the resulting "relationships." Bazzle, 539 U.S. at 451, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407. Therefore, the Court concluded that the parties seem to have agreed that an arbitrator, not a judge, would answer the relevant question and that if there is doubt about the scope of arbitrable issues, the Court should resolve the doubt in favor of arbitration. Bazzle, 539 U.S. at 451-52, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407. Accordingly, where the arbitration agreement contains sweeping language concerning the scope of the questions committed to arbitration, as in the present case, matters relating to the preliminary arbitrability questions should be for the arbitrator, not the courts, to decide.

However, in Illinois, section 2 of the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/2 (West 2002)) provides the parties with an avenue to bring arbitrability questions before the courts. Section 2 provides in pertinent part:

> "Proceedings to compel or stay arbitration. (a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with

arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.        (b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration."

710 ILCS 5/2(a),(b) (West 2002).

This procedure allows a party to petition the circuit court to determine arbitrability questions where the party challenges the existence of an arbitration agreement.  Upon such application, the court is charged with interpreting the parties' agreement and determining whether the issue is arbitrable or one that it must address.  Here, KNS did not petition the circuit court pursuant to section 2 of the Arbitration Act to challenge the existence of the arbitration agreement.  Rather, KNS engaged in the arbitration and argued the validity of the employment contracts before the arbitrator.  In doing so, KNS submitted the issue to the arbitrator's determination.  Applying the Supreme Court's analysis in <u>Bazzle</u>, we find that the preliminary arbitrability questions in this case (<u>i.e.</u> the validity of the employment agreements), should be for the arbitrator, not the courts, to decide.

  B.  KNS's Claim That the Arbitrator Exceeded His Authority in Awarding the Amount of

Unpaid Compensation

KNS next contends that the circuit court should have vacated the arbitrator's award where the arbitrator exceeded his authority by awarding Jeffrey and Nicholas greater wages than those provided for in their contracts and awarding them attorney fees.

Judicial review of an arbitration award is more limited than the review of a trial court's decision. Equity Insurance Managers of Illinois, LLC v. McNichols, 324 Ill. App. 3d 830, 835 (2001). Because the parties have agreed to have their dispute settled by an arbitrator, it is the arbitrator's view that the parties have agreed to accept, and the court should not overrule an award simply because its interpretation differs from that of the arbitrator. Everen Securities, Inc. v. A.G. Edwards & Sons, Inc., 308 Ill. App. 3d 268, 273 (1999). There is a presumption that the arbitrator did not exceed his authority (Tim Huey Corp. v. Global Boiler & Mechanical Inc., 272 Ill. App. 3d 100, 106 (1995)) and a court must construe an award, if possible, so as to uphold its validity (Equity Insurance, 324 Ill. App. 3d at 835). A court has no power to determine the merits of the award simply because it strongly disagrees with the arbitrator's contract interpretation. Herricane Graphics, Inc. v. Blinderman Construction Co., 354 Ill. App. 3d 151, 156 (2004). Also, a court cannot overturn an award on the ground that it is illogical or inconsistent. Herricane Graphics, Inc., 354 Ill. App. 3d at 156. In fact, an arbitrator's award will not even be set aside because of errors in judgment or a mistake of law or fact. Herricane Graphics, Inc., 354 Ill. App. 3d at 156.

The limited circumstances under which this court may modify or vacate an

arbitration award are set forth in the Arbitration Act (710 ILCS 5/1 et seq. (West 2002)). Under section 12(a) of the Arbitration Act (710 ILCS 5/12(a) (West 2002)), a court can vacate an award in the following circumstances: (1) the award was obtained by corruption or fraud; (2) the arbitrator was partial; (3) the arbitrator exceeded his powers; (4) the arbitrator unreasonably refused to postpone the hearing or hear material evidence; or (5) there was no arbitration agreement.

Although a court cannot vacate an award due to errors in judgment or mistakes of fact or law, a court can vacate an arbitration award where a gross error of law or fact appears on the award's face, or where the award fails to dispose of all matters properly submitted to the arbitrator. Herricane Graphics, Inc., 354 Ill. App. 3d at 156. The burden is placed on the challenger to prove by clear and convincing evidence that an award was improper. Thomas v. Leyva, 276 Ill. App. 3d 652, 654 (1995).

Here, KNS disagrees with the arbitrator's determination of the amount of unpaid compensation awarded to Nicholas and Jeffrey. KNS argues that the circuit court should have vacated the arbitrator's award where he exceeded his powers, pursuant to section 12(a)(3) of the Arbitration Act.

However, we find that the circuit court did not have the authority to vacate the arbitrator's award. In determining the proper standard to be applied in construing section 12(a)(3) of the Arbitration Act, the appellate courts have looked to the

explanation of the chairman of the committee that drafted the
Arbitration Act:

> " ' "[T]he question for the court is whether the
> construction of the contract made by the arbitrator is
> a reasonably possible one that can seriously be made in
> the context in which the contract was made.  Stated
> affirmatively, if all fair and reasonable minds would
> agree that the construction of the contract made by the
> arbitrator was not possible under a fair interpretation
> of the contract, then the court would be bound to
> vacate or refuse to confirm the award." ' "  Herricane
> Graphics, Inc., 354 Ill. App. 3d at 157, quoting Rauh
> v. Rockford Products Corp., 143 Ill. 2d 377, 391-92
> (1991), quoting M. Pirsig, Some Comments on Arbitration
> Legislation and the Uniform Act, 10 Vand. L. Rev. 685,
> 706 (1957).

It is clear that the arbitrator heard the testimony,
assessed the credibility of the witnesses, and considered the
exhibits and evidence presented.  The arbitrator found that KNS
agreed to pay Nicholas as president emeritus from April 26, 2002
through December 2002.  The arbitrator also found that KNS
suspended Nicholas on May 14, 2002, and did not pay him after May
1, 2002.  The arbitrator considered that Nicholas's compensation
for the year 2002 was $303,490.  The arbitrator then determined
that KNS was liable to Nicholas, pursuant to his employment

1-05-0284

contract, in the amount of $194,000 for unpaid compensation for the period of May 1, 2002, through December 7, 2002. The arbitrator also found that Jeffrey had an employment contract with KNS providing for wages through December 2002. The arbitrator found that Jeffrey was terminated on May 14, 2002, and that he was not terminated for cause. The arbitrator concluded that KNS was liable to Jeffrey in the amount of $101,000 for unpaid compensation for the period from May 1, 2002, to December 7, 2002. Here, there is no indication that the arbitrator acted in bad faith, was guilty of fraud or chose not to follow the law. Accordingly, the circuit court did not have the authority to vacate the award where the arbitrator's calculation of unpaid compensation due to Nicholas and Jeffrey was a reasonable construction of the employment contracts.

C. KNS's Claim That the Arbitrator Exceeded His Authority By Awarding Attorney Fees

KNS further argues that the arbitrator exceeded his authority by awarding Nicholas and Jeffrey attorney fees, which were not part of their employment agreements or permitted by statute. Nicholas and Jeffrey argue that the arbitrator's award was proper under the Attorneys Fees in Wage Actions Act (Attorney Fees Act) (705 ILCS 225/0.01 et seq. (West 2002)), which provides that where an employee establishes by the decision of the court or jury that he is owed wages, he is entitled to attorney fees.

1-05-0284

705 ILCS 225/1 (West 2002).

In his award, the arbitrator found that Nicholas and Jeffrey were "employees under the Illinois Wage Payment and Collection Act" (820 ILCS 115/1 et seq. (West 2002)). The arbitrator subsequently determined that Nicholas and Jeffrey were entitled to "reasonable attorney's fees as provided under Illinois law and consistent with the applicable rules of the American Arbitration Association."

KNS argues that the arbitrator exceeded his authority in awarding attorney fees because the Attorney Fees Act is inapplicable in this case. Section 1 of the Attorney Fees Act provides, in relevant part:

"Whenever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes *by the decision of the court or jury* that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action." (Emphasis added.) 705 ILCS 225/1 (West 2002).

1-05-0284

As previously discussed, section 2 of the Arbitration Act allows a party to petition the circuit court to determine arbitrability questions. In this case, KNS did not submit such application to the court to challenge the arbitration agreement; nor did KNS raise an objection before the arbitrator challenging the arbitrability of the attorney fees sought by Nicholas and Jeffrey in their demands for arbitration. Rather, following the arbitrator's final award, KNS argued that the arbitrator's determination awarding attorney fees was improper because the alleged employment contracts did not provide for them and the Attorney Fees Act was inapplicable to the plaintiffs as they were officers, not employees, of KNS.

In asking the circuit court to vacate the award, KNS also argued that the arbitrator's award of attorney fees improperly included fees incurred in claimant's wrongful discharge claim, as well as the breach of contract claims at issue in this case. In doing so, KNS conceded that the arbitrator could decide the issue of attorney fees. Accordingly, we find that KNS forfeited its arguments that the arbitrator exceeded his authority in awarding attorney fees. We need not decide in this case whether the Attorney Fees Act, in referring to "establishe[d] by the decision of the court or jury," encompasses arbitration awards. As we noted in Heatherly v. Rodman & Enshaw, Inc., 287 Ill. App. 3d 372, 379 (1997), the determination of whether the Attorney Fees Act applies to arbitration awards is best left to the legislature. In Heatherly, the plaintiff argued that the legislature could not have intended that attorney fee recovery in arbitration proceedings be treated differently from the recovery

˘14˘

available in court proceedings.  However, this court explained that "[b]ecause arbitration is considered to be easier, more expeditious, and less expensive than litigation [citations], recovery of attorney fees incurred therein could be deemed to be less important than recovery of costs incurred in litigation. That is a matter properly left to the General Assembly." Heatherly, 287 Ill. App. 3d at 379.   We also leave open the issue of whether a circuit court may award attorney fees pursuant to the Attorney Fees Act, where such fees are not provided for in the arbitration agreement, when a motion to confirm an arbitration award is brought before the court.

D.  KNS's Claim That the Circuit Court Should Have Modified the Arbitrator's Award

KNS lastly contends that the circuit court should have modified the arbitrator's award pursuant to section 13 of the Arbitration Act.  KNS argues that the court should have modified the arbitrator's miscalculation of the unpaid compensation due Nicholas and Jeffrey and the arbitrator's inaccurate description of the dates of Jeffrey's employment contract and the dates he incurred medical expenses.

Section 13(a) of the Arbitration Act (710 ILCS 5/13(a) (West 2002)) allows a court to modify or correct an award where: (1) there was an evident miscalculation or an error in a description; (2) the arbitrators ruled on a matter not submitted to them, and

1-05-0284

the court is able to correct the award without affecting the merits of the decision upon the issues submitted; or (3) the award is imperfect in form.

We find that KNS' alleged errors relating to the compensation due to Nicholas and Jeffrey are not claims of error in mathematical computations which appear on the face of the award. Rather, KNS disagrees with the arbitrator's interpretation of the evidence, construction of the employment contracts, and ultimate assessment of damages. As previously discussed, it is clear that the arbitrator heard the testimony, assessed the credibility of the witnesses, and considered the exhibits and evidence presented. The arbitrator determined that Nicholas's total compensation for the year 2002 was $303,490, and that KNS was liable to Nicholas, pursuant to his employment contract, in the amount of $194,000 for unpaid compensation for the period of May 1, 2002, through December 7, 2002. The arbitrator also found that Jeffrey had an employment contract with KNS and that KNS was liable to Jeffrey in the amount of $101,000 for unpaid compensation for the period from May 1, 2002, to December 7, 2002. KNS disagrees with the arbitrator's analysis and suggests mathematical computations that the arbitrator should have followed to determine the award. However, the arbitrator's award does not contain a mathematical computation or specific accounting to indicate the manner in

˘16˘

which he arrived at the awards of unpaid compensation for Nicholas and Jeffrey.  The award merely sets forth the evidence that was considered and mentions only several figures that were considered in arriving at the ultimate award.  To accept KNS' argument would interfere with the arbitrator's role of interpreting the contracts and discretion in fashioning an equitable award.

In its second issue, KNS argues that Jeffrey's employment contract terminated on December 20, 2002, not December 7, 2002, as indicated by the arbitrator's award.  However, the award determined that KNS was liable to Jeffrey for "unpaid compensation" for the period from May 1, 2002, to December 7, 2002.  The arbitrator's reference to December 7, 2002, was not describing the date of termination of Jeffrey's employment contract.

In its final issue, KNS notes that the arbitrator's award referred to Jeffrey incurring "medical insurance charges of $500.82 per month between June and December 2002."  The arbitrator then determined that KNS was liable to Jeffrey "for $7,968.40 for medical expenses and insurance."  KNS does not dispute the arbitrator's award but argues that the testimony and exhibits show that KNS paid Jeffrey's medical insurance premiums through July 2002.  KNS therefore argues that the circuit  court should have modified the arbitrator's award to reflect that Jeffrey incurred medical insurance charges between "August and

December 2002." Courts are limited in their ability to modify and correct arbitration awards. We find that because this alleged error was not evident on the face of the award, the circuit court did not err in failing to modify the award on this basis.

### III. Conclusion

For the above reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAMPBELL and GREIMAN, JJ., concur.