FOURTH DIVISION
May 10, 2007

1-05-3556


FIRST MERIT REALTY SERVICES, INC.,      )     Appeal from the
AND FIRST MERIT VENTURE,                 )     Circuit Court of
                                         )     Cook County.
          Plaintiffs-Appellees,          )
                                         )
               v.                        )
                                         )
AMBERLY SQUARE APARTMENTS, L.P.,         )
ASHWOOD APARTMENTS, L.P., BRITTANY       )
APARTMENTS, L.P., EASTPOINTE APARTMENTS, )
L.P., GREEN OAKS AT PALOS HILLS, L.P.,   )
KETTERING SQUARE APARTMENTS, L.P.,       )
PINE ISLAND APARTMENTS, L.L.C.,          )
SOUTHMOOR HILLS APARTMENTS, L.P.,        )     Honorable
WOODVIEW APARTMENTS LLC, AND COMMUNITY   )     Julia M. Nowicki
ECONOMIC REDEVELOPMENT CORPORATION OF    )     Judge Presiding.
WISCONSIN,                               )
          Defendants-Appellants.         )


MODIFIED UPON REHEARING

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Defendants Amberly Square Apartments, L.P. (Amberly),

Ashwood Apartments, L.P. (Ashwood), Brittany Apartments, L.P.

(Brittany), Eastpointe Apartments, L.P. (Eastpointe), Green Oaks

at Palos Hills, L.P. (Green Oaks), Kettering Square Apartments,

L.P. (Kettering), Pine Island Apartments, L.L.C. (Pine Island),

Southmoor Hills Apartments, L.P. (Southmoor), Woodview

1-05-3556

Apartments, L.L.C. (Woodview), and Community Economic Redevelopment Corporation of Wisconsin (CERC) appeal the circuit court's order confirming the arbitration award granted to plaintiffs First Merit Realty (FMR) and First Merit Venture (FMV). On appeal, defendants contend that the arbitrators exceeded their authority by "reforming" the parties' written agreements and that Illinois public policy precludes the confirmation of the arbitration award.

BACKGROUND

Plaintiffs, FMR and FMV, are property management businesses. FMR is wholly owned by Gary Baxter. FMV is a limited partnership of which Baxter is part owner. Josyln Development Company, of which Baxter is president, is FMV's corporate general partner. Baxter has been in the real estate business since 1966.

Defendants are business entities that own apartment complexes in various locations across the United States. Scott Canel is associated with each of the defendants in some capacity. He is also a lawyer who has been winding up his legal practice to primarily focus on real estate. As a lawyer, Canel has represented Baxter and entities owned or controlled by Baxter in tax and transactional matters.[1]

_____

[1]Plaintiffs filed a separate lawsuit against Canel for legal

Beginning in 1996 and continuing through 2002, Baxter, through his business entities, sold a series of 10 properties. Each property was sold to one of the defendants. Prior to the sales, FMV or another Baxter business entity managed the properties. After the sale of each of the first nine properties, FMR was retained to manage them. FMV was retained to manage the tenth property, the Southfield property owned by CERC, but was replaced by FMR shortly thereafter. The management of each of the 10 properties was governed by identical management agreements. Further, each property was either directly or indirectly subject to the rules of the United States Department of Housing and Urban Development (HUD).

On March 31, 2003, defendants sent plaintiffs a letter informing them that they were terminating their management agreements effective April 30, 2003. Defendants terminated the agreements pursuant to section 15.1 of the management agreements, which provided in pertinent part:

> "It is expressly understood and agreed by and
> between the parties hereto that the Owner as
> well as the Agent shall have the right to
> terminate the Agreement at the end of any
> calendar month, without penalty, on thirty

malpractice.

> (30) days' advance written notice to the
> Agent."

Subsequently, defendants appointed Ten South Management Company (Ten South), which is controlled by Canel, to manage the 10 properties. In addition, Canel hired Richard Price, who had been president of FMR and vice president of Josyln Development Company, to work for Ten South.

On July 16, 2003, plaintiffs filed a demand for arbitration with the American Arbitration Association (AAA) pursuant to section 18 of the management agreements, which provided:

> "The [AAA] shall be the final arbitrator of
> all unresolved disputes between [defendants]
> and [plaintiffs] and the parties hereto agree
> to abide by the decision of the Arbitrator in
> such case made."

On July 22, 2003, defendants filed counterclaims to which plaintiffs responded on August 22, 2003. Following defendants' filing of an amended counterclaim and plaintiffs' filing of a response and affirmative defenses, plaintiffs filed a statement of claim on January 19, 2004. Therein, plaintiffs (1) sought reformation of the management contracts; (2) alleged that defendants through Canel committed fraud; (3) alleged that defendants aided and abetted Canel's alleged legal misconduct;

1-05-3556

(4) alleged that defendants aided and abetted Price's misconduct; and (5) alleged conspiracy between defendants, Canel, Price, and Ten South. Defendant answered the statement of claim on February 12, 2004.[2]

The arbitration panel, which consisted of three neutral lawyers-arbitrators, proceeded to oversee discovery and motion practice proceedings, followed by a nine-day evidentiary hearing in September 2005. During the hearing, Baxter testified that he consulted Canel as to how to sell the concerned properties while retaining management of them. Canel allegedly suggested that Baxter sell the 10 properties to Canel's business entities, defendants, with the understanding that plaintiffs, Baxter's business entities, would be retained as management companies of those properties so long as Canel controlled them. Baxter testified that he never told anyone about this deal, including Price, other limited partners, and attorneys. Baxter further testified that he relied on Canel, who was one of his lawyers, to represent his interests. He denied ever having read the management agreements, which the record shows Price signed on behalf of plaintiffs.

Conversely, Canel denied that an oral agreement existed in

_____

[2]Baxter and Canal were not parties to the management agreements and thus were not parties to the arbitration.

-5-

which he promised that plaintiffs could manage the 10 properties so long as defendants controlled them. However, Canel conceded on cross-examination that it was his intention that plaintiffs would manage the properties so long as they did a reasonable job. In addition, Canel read from a February 18, 2003, memo he wrote to Baxter that stated in pertinent part, "We also orally agreed that you would retain management of the properties as long as you did a reasonable job."

Following the evidentiary hearing, the arbitration panel delivered an unreasoned ruling, due to defendant's failure to file a timely request for a reasoned ruling. The panel awarded plaintiffs $66,000 against Amberly, $125,000 against Ashwood, $126,000 against Eastpointe, $255,000 against Great Oaks, $125,000 against Kettering, $69,000 against CERC, $155,000 against Southmoor, $123,000 against Woodview, and nothing against Brittany or Pine Island. With respect to defendants' counterclaims, the panel awarded Brittany $1,395.84 and $1,249.46 against FMR for overcharges and cell phone use, respectively. The panel also awarded $1,421.43 each to CERC and Green Oaks against FMR.

Thereafter, defendant Amberly filed a motion to vacate the award in the circuit court of Cook County, and plaintiffs filed a motion to confirm the arbitration award and deny defendants'

request to vacate the award. Following arguments, the circuit court entered a written order on October 14, 2005, in which it granted plaintiffs' motion and denied defendants' motion. In making its ruling, the circuit court determined that the arbitrators did not exceed their authority in granting the award and held that the award did not violate public policy. On October 24, 2005, pursuant to plaintiffs' motion, the circuit court entered its final judgment affirming the arbitration award. Defendants appealed.

ANALYSIS

We initially observe that the arbitrators delivered an unreasoned award. The record shows that the arbitrators' decision merely set forth a procedural history of the case and the monetary awards provided to each party, but did not provide a reasoned analysis for the arbitrators' decision to deliver those awards.

As, plaintiffs assert, however, Commercial Arbitration Rule 42(b) provides that arbitrators need not render a reasoned award unless the parties request such an award prior to the appointment of the arbitrators or if the arbitrators deem it appropriate. American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 42(b), as amended and effective September 15, 2005, (http://www.adr.org/sp.asp?id=22440#R42). As

1-05-3556

such, whereas, here, the parties did not timely request a reasoned award, the arbitrators did not err rendering an unreasoned award.

Turning to the substantive issues before this court, we note that review of an arbitration award is more limited than review of a trial court's decision. Galasso v. KNS Cos., 364 Ill. App. 3d 124, 130 (2006). Where parties have agreed to settle their dispute via an arbitrator, they have agreed to accept the arbitrator's view, and thus, a reviewing court should not overrule an award simply where its interpretation differs from that of the arbitrator. Galasso, 364 Ill. App. 3d at 130. That said, section 12(a) of the Uniform Arbitration Act (Act) (710 ILCS 5/12(a) (West 2004)) does set forth limited circumstances under which a reviewing court may modify or vacate an arbitration award: (1) the award was maintained by corruption or fraud; (2) the arbitrator was not impartial; (3) the arbitrator exceeded his authority; (4) the arbitrator unreasonably refused to postpone the hearing or hear material evidence; or (5) there was no arbitration agreement.

In the case at bar, defendants contend that the arbitrators exceeded their authority by providing an award that resulted from their decision to ignore the clear and unambiguous language of the management agreements. Specifically, defendants claim that

-8-

the arbitrators ignored the language of section 15.1 of the management agreement, which explicitly provided that either party had a "right to terminate the Agreement at the end of any calendar month, without penalty, on thirty (30) days' advance written notice to the Agent."

There is no dispute that on March 31, 2003, defendants sent a letter to plaintiffs informing them that they were going to terminate the relationship on April 30, 2003, in accordance with the management agreements. As such, the record shows that defendants complied with the language of the management agreements when they sought to terminate their business relationship with plaintiffs. Nevertheless, the arbitrators ruled for plaintiffs and awarded them monetary damages.

Plaintiffs argue that defendants should not be allowed to challenge that award where, under the management agreements, the parties agreed to abide by the final ruling of the arbitrators. Plaintiffs further argue that the award in this case was proper pursuant to Commercial Arbitration Rule 43(a), which provides that the arbitrators could have granted "any remedy or relief that [they] deem[] just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule

1-05-3556

43(a), as amended and effective September 15, 2005, (http://www.adr.org/sp.asp?id=22440#R43).

A presumption does exist that the arbitrators did not exceed their authority, and as a reviewing court, we should construe their award, if possible, so as to uphold its validity. Galasso, 364 Ill. App. 3d at 130. We lack the authority to determine the merits of an award simply where we disagree with the arbitrators' interpretation of the contract at issue. Galasso, 364 Ill. App. 3d at 130. Further, we cannot set aside an award on the ground that it is illogical or inconsistent nor can we invalidate an award because of errors in judgment or mistake of law or fact. Galasso, 364 Ill. App. 3d at 130.

We can, however, set aside an award if the arbitrators' errors in judgment are apparent on the face of the award. Shearson Lehman Brothers, Inc. v. Hedrich, 266 Ill. App. 3d 24, 28 (1994), citing Rauh v. Rockford Products Corp., 143 Ill. 2d 377, 393 (1991). "The arbitrators' authority is limited by the unambiguous contract language." Hedrich, 266 Ill. App. 3d at 29. As such, arbitrators do not have the authority to ignore the plain language of the contract and to alter the agreement, as the ultimate award must be grounded on the parties' contract. Hedrich, 266 Ill. App. 3d at 29.

In Hedrich, three former employees commenced an arbitration

-10-

proceeding against Shearson Lehman Brothers, Inc. (Shearson), for compensation they alleged was owed to them under Shearson's deferred compensation plan (plan). The arbitration panel subsequently awarded each employee a lump sum as owed under the plan. Hedrich, 266 Ill. App. 3d at 25. Thereafter, the circuit court denied Shearson's petition to vacate or modify the award. Hedrich, 266 Ill. App. 3d at 25. Shearson appealed.

On appeal, this court observed that the plan contained provisions with explicit percentages to use to calculate the employees' compensation. Hedrich, 266 Ill. App. 3d at 26-27. Despite those explicit provisions, however, the arbitration panel utilized different percentage calculations to award the employees. Hedrich, 266 Ill. App. 3d at 27. Although the employees argued that the parties had agreed to abide by the arbitrators' decision, this court found that the arbitration panel exceeded its authority in awarding the employees compensation that was "clearly not based upon the precise and unambiguous mathematical formulas provided in the deferred compensation agreements." Hedrich, 266 Ill. App. 3d at 29. As such, this court vacated the arbitration panel's award and ordered Shearson to pay the employees compensation as provided in the plan. Hedrich, 266 Ill. App. 3d at 31.

Like Hedrich, the arbitrators' error is apparent on the face

of the award in this case. As stated, defendants clearly complied with section 15.1 of the management agreements where they provided 30 days' advance written notice at the end of a calendar month to sever their business relationship with plaintiffs. Yet, the arbitrators ruled against defendants. In doing so, we find that the arbitrators clearly ignored the explicit language of the written agreements and thus exceeded their authority in awarding damages to plaintiffs.

Nonetheless, plaintiffs argue that the arbitrators did not ignore the written agreement between the parties but, rather, merely reformed the agreement based on an alleged oral agreement between the parties that was formed subsequent to the written agreements. Plaintiffs contend that the award for the plaintiffs was proper given that oral agreement.

Due to the lack of the arbitration panel's reasoning in the written award, plaintiffs surmise that the arbitrators' ruling hinged on Baxter's and Canel's testimony before the arbitration panel. The record shows that Baxter testified that when he consulted Canel about selling the 10 concerned properties, Canel suggested that Baxter sell the properties to Canel's business entities. Baxter further testified that Canel agreed that Baxter's business entities would retain management control over the 10 properties so long as Canel's business entities controlled

them.  Although Canel acknowledged that he intended for plaintiffs to manage the properties so long as they did a reasonable job, which he stated in a February 13, 2003, memo to Baxter, he refuted that any such oral agreement existed between Baxter and himself.

In this court, plaintiffs argue that in analyzing the testimony of Baxter and Canel, the arbitrators likely considered that Canel had a conflict of interest in this case where he acted as Baxter's attorney despite being a party to the "opposite side" of the transaction.  As plaintiffs assert, such conduct was in contravention of Rule 1.8 of the Illinois Code of Professional Responsibility (134 Ill. 2d R. 1.8) where Canel allegedly neither disclosed the conflict of interest nor obtained Baxter's consent with respect to the dealings.  Given the arbitration panel's award, the plaintiffs argue that the arbitrators found that Baxter provided the more credible testimony and thus determined that an oral agreement existed between the parties, which provided that plaintiffs would manage the concerned properties as long as Canel had an ownership interest in them.

Based on the arbitration panel's determination that an oral agreement existed between Baxter and Canel subsequent to the written management agreements, plaintiffs contend that the arbitrators acted properly where they reformed the written

agreements to conform with the alleged oral agreement. Plaintiffs, however, cite no cases to support the arbitrators' ability to reform a written contract. Rather, the only cases upon which they rely for such a proposition, Zannini v. Reliance Insurance Co., 147 Ill. 2d 437, 457 (1992), and La Salle National Bank v. 850 De Witt Place Condominium Ass'n, 257 Ill. App. 3d 540 (1994), involved reformation of contracts by the circuit court, not an arbitration panel's reformation of a contract.

Given the facts of this case and the lack of case law to support an arbitrator's reformation of a contract, we cannot agree with the arbitrators' ruling where they evidently considered parol evidence and reformed the written agreements despite the clear and unambiguous language of those written agreements. Although we recognize that the management agreements between the parties contained an arbitration clause in which the parties agreed to abide by the final ruling of the American Arbitration Association, we find that, by ignoring the clear language of the agreements and relying on an alleged oral agreement, the arbitrators exceeded their authority in ruling for plaintiffs.

As defendants note, plaintiffs appear to recognize that the arbitrators in this case exceeded the scope of their authority as plaintiffs suggest that this court should apply any finding that

the arbitrators exceeded their authority prospectively.  We find that argument to be without merit.  As noted above, there is no case law stating that arbitrators have authority to reform contracts in order to resolve disputes between parties.  Consequently, since we do not find the facts of this case to allow for such a remedy, we are compelled to vacate the arbitrators' ruling.

Having determined that the arbitrators exceeded their authority in awarding plaintiffs monetary damages, we need not consider the parties' public policy arguments.

Finally, we find no reason to disturb the arbitrators' ruling on defendants' counterclaims where that ruling did not stem from the improper reformation of the parties' contract.

CONCLUSION

For the reasons stated above, we vacate the American Arbitration Association's award.

Vacated.

NEVILLE and MURPHY, JJ., concur.