FIRST HEALTH GROUP CORPORATION, a Wholly Owned Subsidiary of Coventry Health Care, Inc., Plaintiff-Appellant, v. RICHARD E. RUDDICK, Defendant-Appellee.

First District (1st Division)   No. 1—08—3236

Opinion filed July 6, 2009.

Jeffrey C. Clark and Julie Ann Sullivan, both of McGuireWoods LLP, of Chicago, for appellant.

Thomas Ging and Stephen Vernon, both of Hinshaw & Culbertson LLP, of Chicago, for appellee.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Defendant Richard E. Ruddick, a retired health insurance executive, provided consulting services to plaintiff First Health Group Corporation (First Health), a health benefits company located in Downers Grove, Illinois. After plaintiff sent him a termination letter, defendant filed a demand for arbitration with the American Arbitration Association, as required by their agreement for the settlement of disputes.

Defendant's demand sought reformation of the parties' written agreement claiming a mutual mistake or, alternatively, rescission of the written agreement and enforcement of the parties' earlier oral agreement. After a two-day hearing on May 15 and 16, 2007, the arbitrator issued a detailed nine-page award on July 13, 2007, ruling in defendant's favor. The arbitrator stated that he found "based on clear and convincing evidence that there was a mutual mistake of fact in the preparation and execution of the February 2004 [written] agreement and that the February 2004 agreement between Ruddick and First Health should therefore, be reformed, by deleting" the provisions permitting termination on 30 days' notice, thereby leaving intact the provision terminating the contract on December 31, 2010.

Plaintiff moved to vacate the arbitration award in the circuit court of Cook County, and defendant moved to confirm the award. In an order dated June 23, 2008, the circuit court denied plaintiff's motion to vacate and granted defendant's motion to confirm the award. On appeal, plaintiff makes two claims: (1) that the arbitrator exceeded his authority by reforming the contract; and (2) that, in reforming the contract, the arbitrator committed gross errors of fact and law that are apparent from the face of the award. For the following reasons, we affirm the award.

## BACKGROUND

There is no dispute that, in December 2000, plaintiff sought defendant's assistance in acquiring a new client, the Mail Handlers Benefit Plan (MHBP), which did, in fact, become a client of plaintiff in April 2002. There is also no dispute that, from 2000 through 2003, plaintiff paid defendant for his consulting services on the basis of a handshake and without a written agreement.

Defendant claims that, prompted by concerns about his health and protecting his wife in case of his death, he sought a written agreement. The written agreement was executed by the parties on February 16, 2004. Defendant claims that, as a result of a scrivener's error, the 2004 written agreement mistakenly contained a termination provision

that was not intended by the parties and that permitted termination of the 2004 agreement upon 30 days' notice. The 2004 agreement contains two paragraphs, both numbered "7B." The first 7B paragraph is entitled "Termination in the Event of Death" and provides that plaintiff will pay defendant's spouse if defendant dies. The second 7B paragraph and a 7C paragraph, also entitled "Termination," permit termination upon 30 days' notice. There is no dispute between the parties concerning paragraph 7A, which provides that the 2004 written agreement automatically terminates on December 31, 2010.

## Documents

The 2004 written agreement was seven pages long and contained seven sections. The seventh section is the section in dispute. It is entitled "Term/Termination," and it states in full:

"7. TERM/TERMINATION

A. *Term.* This agreement will terminate on December 31, 2010.

B. *Termination in the Event of Death.* In the event of CONSULTANT'S death prior to termination of this Agreement, payments will be made to CONSULTANT'S spouse, Mary Francis, or, if CONSULTANT'S spouse predeceases CONSULTANT, then to CONSULTANT'S estate, in the same manner as provided herein, up to the date of termination.

B. *Performance Default.* If either Party materially fails to perform any of its duties or obligations under this Agreement ('Default') and the Default is not cured within (30) days after written notice is given to the Defaulting Party specifying the Default, the Party not in Default may terminate this Agreement by giving written notice to the Defaulting Party.

C. *Termination.* Either party may terminate this Agreement at any time upon (30) days prior written notice. Both Parties are obligated to perform during the notice period until the termination date.

D. *Amounts Owing.* Upon expiration or termination of this Agreement, First Health will promptly pay CONSULTANT all amounts due under this Agreement. First Health will be liable only for payment of Consulting Services that were properly rendered up to the expiration or termination date at the rate(s) set forth in Section 5."

In a letter dated May 26, 2004, and addressed to Edward Wristen, the chief executive officer of First Health, defendant stated that he wanted to assign his "Consulting Contract, for estate purposes, to The Ruddick Family Trust." It does not appear from the record that this assignment occurred.

After being acquired by Coventry Health Care, Inc., plaintiff sought to terminate the 2004 written agreement upon 30 days' notice. In a letter dated January 31, 2005, and addressed to defendant, James E. McGarry, the chief operating officer, of First Health stated:

"Pursuant to Section 7(C) of the Consulting Services Agreement ('Agreement') dated February 1, 2004, by and between yourself and First Health Group, Corp. ('FHGC'), this letter shall serve as formal notice of FHGC's termination of your services under the Agreement. Termination will be effective thirty (30) days from the date of this letter."

## Arbitration Proceedings

Since the 2004 written agreement required any claims to be settled by arbitration, defendant filed an arbitration demand on April 27, 2006. The 2004 agreement contained a broad arbitration provision, requiring arbitration for any claim "relating to" the agreement:

"5S. *Arbitration.* Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association *** ."

Defendant's statement of claim had three counts. Count I sought reformation of the 2004 written agreement by eliminating paragraph 7C. Count II alleged breach of the 2004 written agreement, which provided that, even upon termination, plaintiff was liable for payment for consulting services that were already rendered. Count III alleged breach of the parties' earlier, oral contract. On March 20, 2007, defendant amended his statement of claim, but the amended statement alleged the same three counts.

In response to these three counts, plaintiff argued in its prehearing brief that (I) reformation of the 2004 written contract was not warranted, because defendant could not show, by clear and convincing evidence, that there was a mutual mistake by the parties; (II) plaintiff had complied with the terms of the 2004 written agreement; and (III) both the merger clause in the 2004 written agreement and the statute of frauds (740 ILCS 80/1 (West 2006)) defeated any claims under the earlier, oral contract.

The arbitration hearing occurred on May 15 and 16, 2007. On July 13, 2007, the arbitrator entered an award, reforming the contract and granting defendant $1,035,416.42 in damages. In conclusion, the arbitrator stated:

"I find based on clear and convincing evidence that there was a mutual mistake of fact in the preparation and execution of the February 2004 agreement (Respondent's Exhibit 1) and that the February 2004 agreement between Ruddick and First Health

should therefore, be reformed by deleting paragraph 7C and the second paragraph 7B. Therefore the following paragraph[s] 7B and 7C are hereby deleted from Responsdent's Exhibit 1 and the contract is reformed to be in full force and effect without these two deleted paragraphs ***."

The above ruling left intact paragraph 7A, which provided that "[t]his agreement will terminate on December 31, 2010."

The arbitrator explained how he calculated the damages amount of the award, as follows. Under the contract, defendant was due a total of $1,210,416.39. The arbitrator explained that he calculated the total amount due, as follows: "$14,583.33 per month x 83 months (February 1, 2004 to December 31, 2010) equals $1,210,416.39." February 1, 2004, was the date of the contract, and December 31, 2010, was the contract's stated date of termination. However, a number of payments had already been made by plaintiff and received by defendant, and the total amount of these payments had to be subtracted from the amount owed. The arbitrator explained that he calculated the payments as follows: "The payments from February 1, 2004 to January 2005 equal $174,999.97 ($12,500 in February 2004, $12,500 in March 2004, $4,166.67 in March 2004 and $14,583.33 per month for ten months from April 1, 2004 to January 3, 2005." The arbitrator then subtracted the payments from the amount owed to arrive at the award: "$1,210,416.39 minus $174,999.97 equals $1,035,416.42." On appeal, neither party disputes the arbitrator's calculations or his means for calculating the award.

## Circuit Court Proceedings

On October 3, 2007, plaintiff filed, in the circuit court of Cook County, a complaint and application to vacate the arbitrator's award. In its supporting memorandum, filed December 31, 2007, plaintiff asked the trial court to vacate the award because (1) the arbitrator exceeded the scope of his authority by reforming the contract; and (2) the arbitrator's award was based on gross errors of law. The two claimed errors of law were (a) that the arbitrator "could not have applied" a "clear and convincing evidence" standard, despite his statement that he had; and (b) that the arbitrator improperly used parol evidence to modify the terms of the agreement. On November 15, 2007, defendant filed a motion to confirm the arbitrator's award. Defendant filed his supporting memorandum on December 31, 2007, and a reply memorandum on January 4, 2008. In his reply memorandum, defendant argued: "First Health waived the issue of whether the arbitrator had the authority to award reformation by its failure to object to the submission of Ruddick's Amended Statement of Claim." Approximately a third of the reply's argument is devoted to this issue.

On January 22, 2008, the motions to vacate and to confirm were set for a hearing on March 4, 2008. However, argument was not heard until April 3, 2008, when defendant's counsel tendered "a trial memorandum" concerning the arbitrator's authority to grant reformation. After plaintiff's counsel requested an opportunity to respond, the trial court stated that it would wait to issue a decision. The trial court then issued a written order permitting plaintiff to file "his trial memorandum #2" and giving defendant until April 24, 2008, to file a response.

On June 23, 2008, the trial court heard argument a second time on the motions to confirm and to vacate. At this proceeding, the parties and the trial court discussed the issue of whether plaintiff had waived its objection to the arbitrator's authority to reform the contract, by failing to raise this objection before the arbitrator:

"THE COURT: When did—let me see if I have the parties here. When did First Health first state that this wasn't subject to arbitration, this petition for reformation?

PLAINTIFF'S COUNSEL: In the arbitration, we argued that there was no—he had to enforce the written agreement of the—

THE COURT: And I was looking at the pleadings before the arbitrator and I saw the petition for reformation of the contract. And then I saw the response was that—contesting that there was any mutual mistake or anything of that nature.

Was there anything raised in the response to—

DEFENSE COUNSEL: Your Honor, you're right. We did argue—I didn't have time to take every point, but we argue waiver because they don't object and that's a part of our—last part of our first brief, No. 1 brief,[1] is a section devoted to waiver, Judge.

THE COURT: I was just wondering when it was first raised.
***

PLAINTIFF'S COUNSEL: Well, just to clarify a few points, your Honor, we did not raise that the—this reformation, this claim wasn't arbitrable because the claim was under the contract. And we raised that the contract is unambiguous and provides for 30 days' notice and that he cannot reform the contract. We raised that in the arbitration itself."

After listening to counsel's argument, the trial court issued a detailed ruling from the bench, citing both facts and case law. With respect to waiver, the trial court stated:

"And in looking at this case, I—the one thing that I did focus on when I first reviewed these papers was why are we waiting until

---

[1]The "No. 1 brief" appears to be a reference to defendant's reply brief, filed on January 4, 2008.

this stage, after a full arbitration took place over a series of day[s], to bring up the issue of whether or not this claim was initially subject to arbitration. If this wasn't able to be arbitrated, then why go through and force the parties—both parties to go through arbitrating this claim."

The trial court concluded "if there is an objection to the arbitrability [*sic*] of a claim, that has to be raised in the answer to that claim" and "[t]hat was never raised in the answer to the claim." After ruling that "First Health Group waived the right to argue that this—the petition wasn't—should not have been arbitrated," the trial court reiterated:

"And I think that by forcing a party to arbitration without noting that you object to the fact that whether or not this is arbitrable to begin with and then to argue once everything's been determined by the arbitrator after a rather lengthy arbitration, to bring up this argument that this wasn't—they didn't have the power to arbitrate this to begin with, I believe it was waived."

In a written order dated June 23, 2008, the trial court denied plaintiff's motion to vacate and granted defendant's motion to confirm.

After the trial court denied on October 22, 2008, plaintiff's motion to reconsider, plaintiff filed a notice of appeal on November 21, 2008, and this appeal followed.

## ANALYSIS

On appeal, plaintiff asks us to vacate the arbitrator's award.

Our supreme court has instructed its appellate and trial courts that "wherever possible" we must "construe arbitration awards so as to uphold their validity." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001); see also *Anderson v. Golf Mill Ford, Inc.*, 383 Ill. App. 3d 474, 479 (2008) (we "must" construe awards, wherever possible, to uphold them). We start with "the presumption that the arbitrator did not exceed his [or her] authority." *Galasso v. KNS Cos.*, 364 Ill. App. 3d 124, 130 (2006); *Herricane Graphics, Inc. v. Blinderman Construction Co.*, 354 Ill. App. 3d 151, 155 (2004). "Thus, a court will grant a petition to vacate an arbitration award only in extraordinary circumstances." *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 564 (2005). This favorable posture on review is based on both statute and sound policy. The "Illinois Uniform Arbitration Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes." *Salsitz*, 198 Ill. 2d at 13. Like the legislature, courts of this state also favor arbitration because it is "an effective, expeditious, and cost-efficient method of dispute resolution." *Salsitz*, 198 Ill. 2d at 13; *Yorulmazoglu*, 359 Ill. App. 3d at 564, quoting *Kalish v. Illinois Education Ass'n*, 166 Ill. App. 3d 406, 410 (1988) (" 'easier, quicker, and more economical' " than litigation).

■ As a result, "[j]udicial review of an arbitrator's award is extremely limited, more limited than appellate review of a trial." *Anderson*, 383 Ill. App. 3d at 479; *Yorulmazoglu*, 359 Ill. App. 3d at 564; *Herricane*, 354 Ill. App. 3d at 155. " 'Limited judicial review fosters the long-accepted and encouraged principle that an arbitration award should be the end, not the beginning of litigation.' " *Yorulmazoglu*, 359 Ill. App. 3d at 564, quoting *Perkins Restaurants Operating Co., L.P. v. Van Den Bergh Foods Co.*, 276 Ill. App. 3d 305, 309 (1995). "When parties agree to submit a dispute to arbitration for a binding and nonappealable decision, they bargain for finality." *Yorulmazoglu*, 359 Ill. App. 3d at 564. The point of arbitration is to provide a quick and economical alternative to litigation, not to add yet another round before entering the district and appellate courts. *Yorulmazoglu*, 359 Ill. App. 3d at 564.

Plaintiff offers two separate grounds for vacating the award. First, plaintiff claims that arbitrators in general lack the authority to reform a contract, and thus we should vacate the award in the case at bar, because the arbitrator lacked the authority to arbitrate defendant's claim for reformation. *First Merit Realty Services, Inc. v. Amberly Square Apartments, L.P.*, 373 Ill. App. 3d 457 (2007).

Second, plaintiff claims that we should vacate the award because the arbitrator made gross errors of law and fact that are apparent on the face of the award. Specifically, plaintiff claims: that the arbitrator relied on parol evidence to reform the contract and that he failed to apply the "clear and convincing" standard, even though the arbitrator stated that he did. Plaintiff also claims that the trial court relied on a case that was factually and legally distinguishable, namely, *Northern Indiana Public Service Co. v. United Steelworkers of America, Local 12775*, 243 F.3d 345 (7th Cir. 2001).

### Arbitrator's Authority

■ Plaintiff's first argument for vacating the award is that defendant's claim for reformation was not even subject to arbitration.

We review *de novo* the question of whether a claim is subject to arbitration. *Salsitz*, 198 Ill. 2d at 13-14. To preserve for judicial review the issue of whether a claim was subject to arbitration, a party must object "to the arbitration proceedings in a timely manner." *Salsitz*, 198 Ill. 2d at 17; *Anderson*, 383 Ill. App. 3d at 479. An objection should occur "at the earliest possible moment" to save the time and expense of a possibly unwarranted arbitration. *Tri-City Jewish Center v. Blass Riddick Chilcote*, 159 Ill. App. 3d 436, 439 (1987). A party must object to the arbitrability of a claim "no later than the filing of the answer." *Anderson*, 383 Ill. App. 3d at 479. If a party objects in a timely man-

ner, the issue will be preserved for judicial review, even if the party then participates in the subsequent arbitration proceeding. *Salsitz*, 198 Ill. 2d at 18.

In the case at bar, we do not even reach the issue of whether arbitrators have the authority to reform a contract, because plaintiff waived it. Plaintiff waived the arbitrability issue by failing to raise it, at any time, during the arbitration. Although plaintiff filed both a prehearing brief and a posthearing brief, plaintiff did not raise this issue in either submission. During arbitration, plaintiff did argue that reformation was not warranted on these particular circumstances because there was no mutual mistake and no scrivenor's error. However, plaintiff did not argue that an arbitrator cannot reform a contract. In fact, plaintiff's prehearing brief to the arbitrator listed the factors that defendant "must show" in order "[t]o successfully state a claim for reformation" before the arbitrator. If the arbitrator made an error in even considering a reformation claim, defendant invited it. *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (when a party "procures, invites or acquiesces" to a ruling, even if the ruling is improper, he cannot contest the ruling on appeal); *People v. Harvey*, 211 Ill. 2d 368, 386 (2004); *People v. Caffey*, 205 Ill. 2d 52, 114 (2001).

If a party fails to object during arbitration, the issue is waived, unless the party can present a "justification" for the delay, such as an inability to discover pertinent facts. *Craig v. United Automobile Insurance Co.*, 377 Ill. App. 3d 1, 4 (2007). " 'Through the operation of waiver, a party may become bound by an award which otherwise would be open to attack.' " *Craig*, 377 Ill. App. 3d at 3, quoting *Tri-City Jewish Center v. Blass Riddick Chilcote*, 159 Ill. App. 3d 436, 440 (1987). Thus, even if the arbitrability of the reformation claim would otherwise have been open to attack, plaintiff is bound to the award now, because of plaintiff's own failure to object.

In prior cases, the appellate court has not hesitated to find that a party waived an issue for judicial review by failing to raise it to the arbitrator. *Craig*, 377 Ill. App. 3d at 3 (issue waived by failing to raise it); *Tri-City*, 159 Ill. App. 3d at 439 (issue waived by failing to raise it). For example in *Craig*, plaintiff filed an uninsured motorist claim under an insurance policy issued by defendant for plaintiff's vehicle. *Craig*, 377 Ill. App. 3d at 2. After plaintiff received an award in arbitration, defendant attempted to vacate the award, on the ground that a vehicle records search revealed that plaintiff was not, in fact, the owner of the vehicle. *Craig*, 377 Ill. App. 3d at 2-3. We held that defendant had waived this issue by failing to raise it to the arbitrator and by providing no justification for waiting to do a records search. *Craig*, 377 Ill. App. 3d at 3. Thus, by waiting, defendant waived an otherwise valid claim.

Even if an issue was raised to the arbitrator, a court will consider it waived, if the party failed to raise it to the arbitrator in a timely manner. *Anderson*, 383 Ill. App. 3d at 479. In the case at bar, the parties agreed in the 2004 written agreement that the Commercial Arbitration Rules of the American Arbitration Association (AAA) would apply. AAA Rule R—7(c) states: "A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection."[2] American Arbitration Association, Commercial Arbitration Rules, R. R—7(c) (eff. ___). Thus, in *Anderson*, where the parties agreed to be bound by AAA rules, this court held that a party had waived any objection to the arbitrability of a counterclaim—even though the party had objected at the arbitration hearing—because it had failed to raise the issue in its answer, as AAA Rule R—7(c) required. *Anderson*, 383 Ill. App. 3d at 479. The case at bar presents an even stronger case for waiver than did the facts of *Anderson* because, in the case at bar, plaintiff did not simply fail to raise the issue in a timely manner; rather it did not raise the issue at any time before the arbitrator.

In reply, plaintiff does not offer a justification for its delay. Instead, plaintiff argues that defendant, in turn, waived the waiver argument by failing to raise it before the trial court. Plaintiff's reply brief states: "Ironically, Defendant asserts *for the first time* [on appeal] that First Health has waived the argument that the Arbitrator lacked the authority to reform the Agreement." This statement is, flat out, false.

Although it was unclear during oral argument before this court whether the trial court or defendant first raised the issue of waiver, the appellate record makes clear that it was defendant. Defendant briefed this issue in writing to the trial court, then argued it orally at a hearing before the trial court, and finally persuaded the trial court to rule in its favor on this issue. Specifically, defendant devoted a third of the argument section of one of its trial briefs to the waiver issue. As quoted above, the parties and the trial court then discussed the waiver issue extensively during a hearing, with plaintiff's counsel given a full opportunity to respond. Last but not least, the trial court stated that it based its ruling, in part, on plaintiff's waiver, noting that it was troubled by plaintiff's "waiting until this stage, after a full arbitration took place" to contest the arbitrator's authority.

---

[2] In addition, AAA R—37 provides that "[a]ny party who proceeds with arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." American Arbitration Association, Commercial Arbitration Rules, R. R—37 (eff. ___).

Plaintiff also claims in its appellate brief that "[d]efendant's argument, however, ignores the fact that [plaintiff] First Health has asserted from the beginning" that the arbitrator lacked the authority to reform the 2004 written agreement. As support, plaintiff then cites—not a document filed with the arbitrator—but its brief before the trial court. It appears then that, like the trial court, plaintiff also cannot find a place—in the arbitration record—where it raised, before the arbitrator, the issue of whether the reformation count was subject to arbitration.

In sum, plaintiff failed to raise, during arbitration, the question of whether defendant's reformation count was even arbitrable, and plaintiff fails to offer on appeal any justification for its delay.

Plaintiff relies almost exclusively on *First Merit Realty Services, Inc. v. Amberly Square Apartments, L.P.*, 373 Ill. App. 3d 457 (2007). In *First Merit*, plaintiff asked the arbitrators to reform a *prior* written agreement, in order to conform it to a *subsequent* oral agreement. *First Merit*, 373 Ill. App. 3d at 463. The written agreement contained a provision permitting termination on 30 days' notice. *First Merit*, 373 Ill. App. 3d at 459. However, in a memo dated several years after the written agreement, defendants' attorney stated that he had " 'orally agreed' " to retain plaintiff so long as plaintiff did " 'a reasonable job.' " *First Merit*, 373 Ill. App. 3d at 460. After plaintiff was terminated upon 30 days' notice, he sought arbitration, and the arbitrators issued an award for plaintiff. *First Merit*, 373 Ill. App. 3d at 459-60. However, since the award provided no reasons or analysis, the appellate court was left to speculate as to the reasons for the award. *First Merit*, 373 Ill. App. 3d at 460-61. This court held that the arbitrators had no authority to reform a prior written contract to conform to a subsequent oral agreement. *First Merit*, 373 Ill. App. 3d at 464.

*First Merit* differs in several striking respects from the case at bar. To start with, *First Merit* did not involve allegations of mutual mistake of fact, with a mistake present on the face of the contract. In the case at bar, the contract at issue had two "7B" paragraphs, indicating a mistake or error. Second, in *First Merit*, plaintiff was asking the arbitrators, in essence, not to reform the old contract because of a mistake in its initial formation, but rather to create an entirely new contract based on a subsequent oral agreement. *First Merit*, 373 Ill. App. 3d at 463. Lastly and most importantly for our opinion today, *First Merit* contained no allegations of waiver. The plaintiff in *First Merit* did not claim that defendants had waived their argument, and thus defendants in *First Merit*—for all we know—may have raised this precise argument to the arbitrator, thereby preserving the claim for

judicial review. Since *First Merit* did not involve waiver, it does not govern the outcome in the case at bar.[3]

In sum, if plaintiff in the case at bar had a legitimate argument against submitting a reformation count to an arbitrator, it had to raise this issue before the arbitrator. It could not sit silent, wait until an adverse award issued, and then first argue that the arbitrator did not have the authority even to hear the claim. Failure to raise a timely objection results in the waiver of even a legitimate claim. " 'Through the operation of waiver, a party may become bound by an award which otherwise would be open to attack.' " *Craig*, 377 Ill. App. 3d at 3 (issue waived by failing to raise it), quoting *Tri-City*, 159 Ill. App. 3d at 440 (issue waived by failing to raise it). Since plaintiff failed to raise its argument that a reformation claim cannot be the subject of arbitration, this issue was waived.

## Alleged Errors

Plaintiff's second ground for vacating the award is that the arbitrator made gross errors of law and fact that are apparent on the face of the award. Specifically, plaintiff claims: (1) that the arbitrator relied on parol evidence to reform the contract; (2) that he failed to apply the "clear and convincing" standard, even though the arbitrator stated that he did; and (3) that the award contains gross errors of fact. Plaintiff also claims that the trial court relied on a case that was factually and legally distinguishable, namely, *Northern Indiana Public Service Co. v. United Steelworkers of America, Local 12775*, 243 F.3d 345 (7th Cir. 2001).

As noted above, "judicial review of an arbitrator's award is extremely limited, more limited than appellate review of a trial." *Anderson*, 383 Ill. App. 3d at 479; *Craig*, 377 Ill. App. 3d at 4; *Yorulmazoglu*, 359 Ill. App. 3d at 564; *Herricane*, 354 Ill. App. 3d at 155. "The Illinois Uniform Arbitration Act 'contemplates judicial disturbance of an award only in instances of fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration.' " *Craig*, 377 Ill. App. 3d at 4, quoting *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996); *Herricane*, 354 Ill. App. 3d at 156; 710 ILCS 5/12(a)(1) through (a)(4) (West 2006). Nonetheless, a court may vacate an award if

---

[3]The trial court in the case at bar also distinguished *First Merit* by stating that "the First Merit Realty case didn't discuss waiver." The trial court stated that, by contrast, "in this case, the First Health Group waived the right to argue that this—the petition wasn't—should not have been arbitrated," where "[t]he very specific petition before the arbitrator was a petition for reformation."

"a gross error of law or fact appears on the face of the award." *Anderson*, 383 Ill. App. 3d at 479; *Herricane*, 354 Ill. App. 3d at 156.

■ First, plaintiff claims that the arbitrator violated the parol evidence rule. "The parol evidence rule generally precludes evidence of understandings not reflected in the contract, reached before or at the time of its execution that would vary or modify it[s] terms." *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 757-58 (2004).

However, "[t]he parol evidence rule is no bar to the admission of evidence on the question[ ] of mutual mistake." *Schaffner v. 514 West Grant Place Condominium Ass'n, Inc.*, 324 Ill. App. 3d 1033, 1045 (2001). It is well established that " '[w]here mutual mistake *** is alleged, parol evidence is admissible to show the true intent and understanding of the parties.' " *Schaffner*, 324 Ill. App. 3d at 1045, quoting *Ballard v. Granby*, 90 Ill. App. 3d 13, 16 (1980); *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864 (2008) ("where a mutual mistake is alleged, parol or extrinsic evidence is admissible to show the true intent of the parties"). "[I]n [a] reformation action, 'parol evidence is *** admitted *** to prove by clear and convincing evidence the actual agreement in light of the allegation that the written instrument, in spite of the apparent agreement expressed by its language, fails to express the actual agreement entered into between the parties.' " *Schaffner*, 324 Ill. App. 3d at 1045, quoting *Brady v. Prairie Material Sales, Inc.*, 190 Ill. App. 3d 571, 578 (1989). This is even more true where, as here, the contract contained evidence of a mistake on its face, namely, the inclusion of two paragraphs both labeled "7B." Thus, in the case at bar, the arbitrator did not err by considering parol evidence.

In its reply brief, plaintiff argues that because there was no mutual mistake, the arbitrator could not consider parol evidence. This argument puts the cart before the horse. The arbitrator could consider parol evidence in order to determine if there had been a mutual mistake. *Schaffner*, 324 Ill. App. 3d at 1045.

■ Second, plaintiff claims that the arbitrator failed to apply the "clear and convincing" standard, even though the nine-page award stated this standard repeatedly. In a claim for reformation based on mutual mistake, the claimant has "the burden of proving by clear and convincing evidence that the parties reached a meeting of the minds resulting in an actual agreement between them, but that, at the time that the deed was reduced to writing and executed, some agreed-upon provision was omitted or one not agreed upon was inserted" through mutual mistake. *Wheeler-Dealer*, 379 Ill. App. 3d at 869.

"Review under the 'manifest disregard of the law' standard requires that the arbitrators deliberately disregarded what they knew to be the law." *Anderson*, 383 Ill. App. 3d at 479, quoting *Quick & Reilly, Inc. v. Zielinski*, 306 Ill. App. 3d 93, 99 (1999). "To vacate an award based on a gross error of law, a reviewing court must be able to conclude, from the award's face, that the arbitrator was so mistaken as to the law that, if apprised of the mistake, he would have acted differently." *Herricane*, 354 Ill. App. 3d at 156. "Gross errors in judgment or gross mistakes of law or fact are not grounds for vacating an award unless the errors are apparent upon the face of an award." *Herricane*, 354 Ill. App. 3d at 158. "The burden is placed on the challenger to prove by clear and convincing evidence that an award was improper." *Herricane*, 354 Ill. App. 3d at 156.

Our review is thus limited to the face of the award. In support of his finding of clear and convincing evidence, the arbitrator noted the following key facts. Both James Smith, who was defendant's chief executive officer (CEO) during the time of the handshake agreement, and Ed Wristen, who was defendant's CEO when the written agreement was negotiated, testified on behalf of plaintiff. Wristen, who negotiated the written agreement on behalf of defendant, testified unequivocally that the 30-day termination provision was not "the deal I made with Dick," the defendant. Plaintiff's one witness, Susan Smith, who was defendant's general counsel during the time of both the handshake agreement and the negotiation of the written agreement, testified that she had no authority to negotiate a contract with defendant. However, she testified that she utilized a form contract which contained a 30-day termination provision.

The arbitrator's recitation of facts, with his statement of the correct standard, does not provide clear and convincing evidence that he, in turn, failed to apply a clear and convincing standard. It is clear from the award that the arbitrator heard live testimony, assessed the credibility of the witnesses and considered carefully the exhibits and evidence presented. *Herricane*, 354 Ill. App. 3d at 157. There is no indication that the arbitrator acted in bad faith, was guilty of fraud, or chose not to follow the law. *Herricane*, 354 Ill. App. 3d at 157 (holding that the trial court lacked the authority to vacate the arbitrator's award).

■ Third, plaintiff claims that the arbitrator committed gross errors of fact that are apparent on the face of the award. However, in this section of its appellate brief, plaintiff did not name any specific facts that were misstated but rather claimed that it was a "fact" that the arbitrator ignored the contract. This is not a factual error but rather plaintiff's view of the arbitrator's decision.

■ Fourth, plaintiff claims that the trial court relied on a case that was factually and legally distinguishable, namely, *Northern Indiana Public Service Co. v. United Steelworkers of America, Local 12775*, 243 F.3d 345 (7th Cir. 2001). This third point by plaintiff concerns an alleged error by the trial court, not by the arbitrator. Since on appeal we review the arbitrator's award, the trial court's citing of a possibly distinguishable case has no impact on our decision today.

The trial court discussed *Northern Indiana* at one of the two hearings on plaintiff's motion to vacate. The trial court's entire discussion of *Northern Indiana* is provided below:

> "In looking at the case law and trying to determine what constitutes looking outside the contract, the case law I found most helpful was *Northern Indiana Public Service Co. v. United Steel Workers of America*. This is a Seventh Circuit case at 243 F.3d 345, Seventh Circuit, 2001.
>
> And in this case, they state that—let's see, the examination to determine whether or not an arbitrator exceeds his or her authority details—entails determining whether the award draws in essence from the contract. It is only when the arbitrator must have basis of award as some body of thought or feeling or policy or law that is outside the contract that the award can be said not to draw its essence from the contract. The arbitrator is not free to think or say that the contract says X, but my view of sound policy leads me to decree Y. And, you know, you resolve any reasonable doubt about whether an award draws its essence from a contract in favor of enforcing the award."

The trial court's statements, quoted above, that an arbitrator cannot substitute the provisions of the contract for his or her own view of "sound policy," and that, wherever possible, courts should enforce the arbitration award, are correct statements of Illinois state law. *Salsitz*, 198 Ill. 2d at 13 (wherever possible, we must construe arbitration awards to uphold them); *W.W. Vincent*, 351 Ill. App. 3d at 757 (our endeavor is to give effect to the parties' intent). In any event, we did not rely on this Seventh Circuit court case in reaching our holding today, nor did we consider the New York state cases also mentioned in passing by the trial court. Thus, even if they were legally and factually distinguishable as plaintiff claims, they had no effect on our decision.

## CONCLUSION

For the foregoing reasons, we affirm. First, plaintiff has waived the issue of whether the arbitrator had the authority to arbitrate

defendant's claim for reformation. Second, the award does not contain gross errors of law or fact apparent on its face.

Affirmed.

HALL and GARCIA, JJ., concur.