NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220534-U

NO. 4-22-0534

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 31, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JENNIFER SWARTZ, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Tazewell County |
| JACK ELSER, Individually and d/b/a A&J TERMITE | ) | No. 20L15 |
| AND PEST CONTROL, | ) | |
|     Defendant-Third-Party Plaintiff, | ) | |
|     v. | ) | |
| J.W.E., LLC, an Illinois Limited Liability Corporation, | ) | |
| d/b/a PILLAR TO POST, | ) | |
|     Defendant-Appellee, | ) | |
|     and | ) | Honorable |
| BARBARA CLUTTS, | ) | Bruce Phillip Fehrenbacher, |
|     Respondent in Discovery. | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Plaintiff failed to establish the trial court erred in enforcing the arbitrator's award.

¶ 2    On August 11, 2021, plaintiff, Jennifer Swartz, was awarded $450 after an arbitrator determined defendant, J.W.E., LLC, an Illinois Limited Liability Corporation, d/b/a Pillar to Post (Pillar to Post), missed and failed to report suspected damage in the master closet and garage ceiling of a house it inspected for plaintiff. On September 7, 2021, plaintiff filed a notice of her rejection of the arbitrator's award. On September 17, 2021, Pillar to Post filed a motion to enforce the arbitration award and a motion to strike plaintiff's rejection of the arbitration award. On January 8, 2022, the trial court granted both of Pillar to Post's motions. On May 25,

2022, on plaintiff's motion, the court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), finding no just reason existed to delay enforcement or appeal of the court's January 8, 2022, order. Plaintiff appeals, arguing the court erred by enforcing the arbitration award. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            Because this appeal involves only the trial court's judgment to enforce the arbitrator's ruling with regard to the dispute between plaintiff and Pillar to Post, we only discuss Swartz's allegations against defendant Jack Elser, individually and d/b/a A&J Termite & Pest Control (A&J), and Barbara Clutts, who was named as a respondent in discovery, as necessary for our decision. As to the allegations against Pillar to Post, plaintiff argued Jason Scoby from Pillar to Post conducted a property inspection on a home located at 161 Chestnut Drive in Morton, Illinois, which plaintiff was in the process of purchasing from Clutts. Plaintiff asserted she relied on Pillar to Post's inspection in deciding to close on the property.

¶ 5            After taking possession of the property, plaintiff alleged she noticed damage inside a closet and contacted A&J, who had also done an inspection of the home prior to the closing. A representative from A&J came to the home and explained the property had clear signs that it had previously been treated for termites. Plaintiff later found live termites present in wood chips at the property. A representative from Kelley Construction came to the house and informed plaintiff that clear areas of prior termite infestation were present in the closet, family room, and the exterior wall of the home. The representative indicated further investigation was needed to determine whether termites had damaged other parts of the home. In addition to the termite damage, the representative also indicated 2x4 lumber had been used as floor joists throughout the home. He also noticed water damage in the garage.

¶ 6 Plaintiff then retained a structural engineer to examine the home. According to plaintiff's complaint, the engineer found the beams under the first floor of the home were not properly anchored and defective. Further, the engineer determined the floors on both the first and second floors of the home could only support a "live load of 50 pounds" because of the floor joists. Kelley Construction estimated the cost to repair the structural defects and termite damage in the home ranged from a minimum of $80,000 to potentially more than $100,000.

¶ 7 The first two counts of plaintiff's complaint were aimed at A&J, alleging negligence and breach of contract, respectively. The remaining two counts alleged negligence and breach of contract against Pillar to Post. Plaintiff alleged Pillar to Post had a duty to report any major structural defects it noted, any other readily visible damage, and other suspicious areas of the property. According to plaintiff, Pillar to Post was negligent because it failed to indicate (1) suspicious fresh paint in the garage, (2) damage to a bedroom closet, which to a trained eye would indicate possible insect or termite damage, and (3) the use of 2x4 lumber as floor joists. Plaintiff also alleged Pillar to Post had a contractual duty, which it violated, to report any major structural defects it noted along with any other damage to the premises that was readily visible or areas that might raise suspicion as to underlying damages. If Pillar to Post had informed plaintiff of these issues, plaintiff indicated she would have hired a structural engineer to look at the home before the closing.

¶ 8 On May 20, 2020, Pillar to Post filed a motion to dismiss plaintiff's counts against it and asked the trial court to compel the arbitration of plaintiff's claims pursuant to the parties' visual inspection agreement. On June 11, 2020, plaintiff responded, asking the court to deny both the motion to dismiss and the motion to compel arbitration. Plaintiff argued the arbitration clause, contained in the visual inspection agreement, was both procedurally and substantively

unconscionable.

¶ 9        After an evidentiary hearing on September 11, 2020, the trial court issued a written order on October 22, 2020, finding the arbitration clause in the visual inspection agreement was enforceable. However, the court also found certain provisions of the contract capping plaintiff's potential damages and imposing significant and one-sided costs on plaintiff if she did not prevail at the arbitration hearing were unconscionable and unenforceable.

¶ 10        Plaintiff and Pillar to Post then proceeded to arbitration through Construction Dispute Resolution Services (CDRS). Pillar to Post provided the arbitrator with a pre-arbitration brief, informing the arbitrator the trial court had ruled a provision in the visual inspection agreement limiting plaintiff's damages was unconscionable and unenforceable. However, the pre-arbitration brief also included the following language: "It is Pillar to Post's position that the court exceeded its authority and did not have the right to invalidate the limitation of liability provision in the agreement." Pillar to Post asked the arbitrator to enforce the limitation of liability provision regardless of the court's ruling and provided argument why the arbitrator should do so.

¶ 11        On August 11, 2021, the arbitrator issued his written ruling. The arbitrator's award summarized the issues and controversies between the parties as follows:

> "The claimant contends that Pillar to Post was negligent in its inspection by failing to note in his report that there were suspicious areas in the garage that showed possible prior water and/or termite damage and fresh paint. Additionally[,] the claimant alleges that Pillar to Post should have noticed and reported damaged wallboard in the master bedroom closet. Finally, the claimant alleges that Pillar to Post had a duty to report possible structural problems in the floor system and crawl space steel beam."

Based on the testimony and documents presented, the arbitrator found "Pillar to Post did not report obvious potential water damage in the master closet and suspected fresh paint on the garage ceiling." As a result, the arbitrator found Pillar to Post was liable to plaintiff for $450 in damages.

¶ 12　　However, the arbitrator also ruled Pillar to Post was "not liable for any alleged structural defects or termite damage." According to the arbitrator's decision, the parties' agreement provided as follows: (1) Pillar to Post was not performing a building code inspection nor was it conducting an inspection for "Pest, Dry Rot, and other Wood Destroying Organisms[;]" (2) "[c]onditions beyond the scope of the inspection will not be identified[;]" and (3) the "[i]nspector is neither responsible for the non-discovery of any patent or latent defects in materials, workmanship, or other conditions of the property, or any other problems which may occur or may become evident after the inspection time and date." Further, the arbitrator indicated the American Society of Home Inspectors (ASHI) Standard of Practice for Home Inspections provides that a home inspector is not required to "[o]ffer an opinion about the adequacy of structural systems and components."

¶ 13　　On September 7, 2021, plaintiff filed a notice of rejection of the arbitrator's award in the trial court. On September 17, 2021, Pillar to Post filed a motion asking the court (1) to strike plaintiff's rejection and (2) to enforce the arbitration award.

¶ 14　　On January 8, 2022, in a written order, the trial court indicated plaintiff argued Pillar to Post obtained the arbitration award via fraud and/or other improper means. The court noted the parties had agreed CDRS's rules and the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)) were applicable to this case. Further, the court stated section 10 of the Federal Arbitration Act (9 U.S.C. § 10 (2018)) provided possible grounds for an arbitration award to be rejected. According to the court's order:

"The record shows that the arbitrator used reasonable considerations to arrive at his conclusions, including receipt of the 10/22/20 Order, and the cap on damages wasn't among those considerations stated in the Award. The fact that the Award was in an amount close to the damage cap may be suspicious but the arbitrator made a record of his knowledge of the Order striking the damage cap clause.

Plaintiff has not established the grounds to vacate the Award.

It is, therefore, Ordered that Defendant's Motion to Strike Rejection of Award is Granted."

The court also granted Pillar to Post's motion to enforce the arbitration award.

¶ 15    On May 25, 2022, pursuant to plaintiff's motion, the trial court entered an order pursuant to Rule 304(a), finding no just reason existed to delay enforcement or appeal of the court's January 8, 2022, order.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    As noted in the trial court's January 8, 2022, order, the parties agreed that the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)) applied because the parties chose to use CDRS in the arbitration process. On appeal, plaintiff argues the court erred in enforcing the arbitrator's award for several reasons. According to plaintiff, (1) the arbitrator's decision was obtained through the bad acts of Pillar to Post's arbitration counsel, which constituted "undue means," (2) the arbitrator violated the limits of the arbitration agreement by enforcing the cap on plaintiff's damages despite the court finding this provision of the agreement unconscionable and unenforceable; and (3) the arbitrator showed a manifest disregard of the law, the court's findings,

and the parties agreement. Plaintiff also asserted the arbitration award is reversible pursuant to section 11 of the Federal Arbitration Act (9 U.S.C. § 11 (2018)).

¶ 19                                    A. Applicable Law

¶ 20          Section 10 of the Federal Arbitration Act (9 U.S.C. § 10(a) (2018)) states:

"(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In addition to section 10, section 11 of the Federal Arbitration Act (9 U.S.C. § 11 (2018)) allows for the modification or correction of an arbitration award in certain circumstances. We note a party moving to vacate an arbitration award bears the "heavy burden" of establishing the award should be vacated. *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006).

¶ 21       In *Eljer Manufacturing, Inc. v. Kowin Development Corporation*, 14 F. 3d 1250, 1253-54 (1994), the Seventh Circuit Court of Appeals stated that, in addition to the reasons set forth in sections 10 and 11 of the Federal Arbitration Act (9 U.S.C. §§ 10, 11 (1994)), an arbitrator's decision can be set aside if the arbitrator deliberately disregarded what he or she knew to be the law. However, the Seventh Circuit also indicated:

> "Errors in the arbitrator's interpretation of law or findings of fact do not merit reversal under this standard. [Citations.] Nor does an insufficiency of evidence supporting the decision permit us to disturb the arbitrator's order. Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review. [Citation.] It is a private system of justice offering benefits of reduced delay and expense. A restrictive standard of review is necessary to preserve these benefits and to prevent arbitration from becoming a 'preliminary step to judicial resolution.' [Citation.]" *Eljer Manufacturing, Inc.*, 14 F. 3d at 1254.

¶ 22       This is similar to the standard set forth by the Illinois Supreme Court. Our supreme court has stated "it is well-established that judicial review of an arbitrator's award is intended to be more limited than appellate review of a trial court's decision." *Rauh v. Rockford Products Corporation,* 143 Ill. 2d 377, 394 (1991). Similar to the Seventh Circuit's statement hereinabove, our supreme court quoted the following language from the United States Supreme Court:

> "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of

the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." *Id.* at 394-95 (quoting *Burchell v. Marsh*, 58 U.S. 344, 349 (1854)).

Moreover, the Illinois Supreme Court explained arbitration awards are to be construed, wherever possible, to uphold their validity. *Id.* at 386. Further, a presumption exists the arbitrator did not exceed her authority. *Id.*

¶ 23                                B. Defense Counsel's Conduct

¶ 24         Plaintiff takes issue with defense counsel's conduct during the arbitration proceedings. First, plaintiff argues defense counsel violated Rules 3.4 and 8.4 of the Illinois Rules of Professional Conduct (Ill. R. Prof'l Conduct (2010) Rs. 3.4, 8.4 (eff. Jan. 1, 2010)). Second, even if defense counsel did not violate any of the Rules of Professional Conduct, plaintiff asserts defense counsel's conduct was so improper that the arbitration award should be considered a product of "undue means." At issue are arguments defense counsel made in a pre-arbitration brief.

¶ 25                                1. *Rules of Professional Conduct*

¶ 26         Plaintiff claims defense counsel violated subsections (c) and (e) of Rule 3.4 and subsections (c) and (d) of Rule 8.4. Rule 3.4 states in relevant part as follows:

> "A lawyer shall not:
>
> * * *
>
> (c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;
>
> ***

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." Ill. R. Prof'l Conduct (2010) R. 3.4(c), (e) (eff. Jan. 1, 2010).

Rule 8.4 states in relevant part:

"It is professional misconduct for a lawyer to:

* * *

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(d) engage in conduct that is prejudicial to the administration of justice." Ill. R. Prof'l Conduct (2010) R. 8.4(c), (d) (eff. Jan. 1, 2010).

¶ 27 According to plaintiff's brief to this court, defense counsel argued that the trial court's ruling—which declared the contractual provision capping plaintiff's damages was unconscionable and unenforceable—was invalid and wrongly decided. Although plaintiff's argument is not entirely clear, it appears she is suggesting defense counsel argued the court's ruling was void and without legal force. According to plaintiff's brief, "During the process of the arbitration briefing, Defense counsel alluded to her brief that the trial court did not have jurisdiction to make the ruling that it did on October 22, 2020, despite the fact that she had not challenged that order through appropriate channels."

¶ 28 The record before us does not contain a transcript of the arbitration hearing to review. However, the record does contain a copy of Pillar to Post's pre-arbitration brief. Based on

our review of the brief, it does not appear defense counsel was telling the arbitrator the trial court's ruling was void and without legal force. Instead, defense counsel was arguing the court's decision was wrong and asking the arbitrator to enforce the provision capping plaintiff's damages as written.

¶ 29        This court cannot read defense counsel's mind, and the record provides no help on this issue. However, a reasonable inference can be made that defense counsel's motive was to preserve her argument that the trial court erred in finding the cap on plaintiff's damages was unconscionable and unenforceable. We note a party can waive an issue for judicial review by failing to raise the issue during arbitration. *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 48-49 (2009). Based on our review of Pillar to Post's pre-arbitration brief and plaintiff's arguments, plaintiff has failed to establish defense counsel violated the Rules of Professional Conduct.

¶ 30                                    2. *Undue Means*

¶ 31        Plaintiff next argues that even if defense counsel's actions do not constitute an ethical violation, "an attorney advising a lay arbitrator that he does not have to follow the trial court's order by which the trial court authorized the arbitration can undoubtedly be described as 'underhanded,' 'conniving,' 'immoral,' if not 'illegal.' " According to plaintiff, defense counsel's conduct amounted to "undue means," and the trial court should have rejected the arbitrator's award because of defense counsel's conduct.

¶ 32        "[U]ndue means must be limited to an action *by a party* that is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence." (Emphasis in original.) *American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 52 F. 3d 359, 362 (1995). "Undue means does not include 'sloppy or overzealous lawyering.' "

*PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F. 3d 988, 991 (1999).

¶ 33        As previously stated, a reasonable inference can be made that defense counsel filed the pre-arbitration brief to preserve her argument the trial court erred in finding the cap on plaintiff's damages was unconscionable and unenforceable. Plaintiff has failed to establish the arguments in defense counsel's pre-arbitration brief rise to the level of undue means.

¶ 34                              C. Arbitrator's Award

¶ 35        Plaintiff next argues the trial court erred in failing to reject the arbitration award pursuant to sections 10(a)(3) and (a)(4) of the Federal Arbitration Act (9 U.S.C. § 10(a)(3), (a)(4) (2018)). According to plaintiff, an arbitrator's decision may be overturned if the arbitrator acts outside the scope of his contractually delegated authority, the arbitrator's decision conflicts with the express provisions of the inspection agreement, the arbitrator exceeded its powers listed in the submission to it, or the arbitrator showed manifest disregard of the law.

¶ 36        Plaintiff asserts the arbitrator clearly violated the limits of the arbitration by enforcing the cap on plaintiff's damages and by exhibiting a manifest disregard for the law. Plaintiff makes the following points in her brief: (1) the trial court's order, which found the cap on plaintiff's damages was unconscionable and unenforceable, was well defined, clear and easy to comprehend; (2) the arbitrator was aware of the court's order; and (3) regardless of the court's order, the arbitrator awarded plaintiff damages below the cap.

¶ 37        According to plaintiff, the arbitrator adopted Pillar to Post's position and violated the trial court's order by awarding plaintiff damages less than the amount allowed by the unconscionable provision of the inspection agreement. Plaintiff argues the damages awarded by the arbitrator have "no discernable relevance" to the cost of repairing the two issues for which the arbitrator found Pillar to Post responsible. Instead, plaintiff notes the arbitrator's damage award is

almost exactly what plaintiff would have been eligible to receive under the unconscionable damage cap. As a result, plaintiff argues the arbitrator showed a manifest disregard for the law and exceeded his authority by entering an award in direct contravention of the parties' inspection agreement as modified by the court's order.

¶ 38    Based on our review of the arbitrator's order awarding plaintiff $450, we see no indication the arbitrator ignored the trial court's order or limited plaintiff's damages based on the provision capping plaintiff's damages, which the court found to be unconscionable and unenforceable. The fact the arbitrator awarded plaintiff less than the amount she would have been eligible to receive under the unconscionable provision does not establish the arbitrator ignored or violated the court's order.

¶ 39    The arbitrator's award summarized the issues and controversies between the parties as follows:

> "The claimant contends that Pillar to Post was negligent in its inspection by failing to note in his report that there were suspicious areas in the garage that showed possible prior water and/or termite damage and fresh paint. Additionally[,] the claimant alleges that Pillar to Post should have noticed and reported damaged wallboard in the master bedroom closet. Finally, the claimant alleges that Pillar to Post had a duty to report possible structural problems in the floor system and crawl space steel beam."

Based on the testimony and documents presented, the arbitrator found "Pillar to Post did not report obvious potential water damage in the master closet and suspected fresh paint on the garage ceiling."

¶ 40    However, the arbitrator also ruled Pillar to Post was not liable for any alleged

termite damage or structural defects in the home. The arbitrator's written decision noted the following factors it considered: (1) the inspection agreement provided that Pillar to Post was not performing a building code inspection nor was it conducting an inspection for "Pest, Dry Rot, and other Wood Destroying Organisms"; (2) the contract stated that "[c]onditions beyond the scope of the inspection will not be identified" and the inspector is not responsible for the "non-discovery of any patent or latent defects in materials, workmanship, or other conditions of the property, or any other problems which may occur or may become evident after the inspection time and date"; and (3) the ASHI Standard of Practice for Home Inspections states a home inspector is not required to "[o]ffer an opinion about the adequacy of structural systems and components."

¶ 41       Unlike the provision of the inspection agreement capping plaintiff's damages, the trial court did not rule these other provisions noted by the arbitrator were unconscionable and unenforceable. Plaintiff offers no substantive argument why the arbitrator erred in its application of these provisions. She also provides no real explanation why the amount of damages she was awarded by the arbitrator was insufficient. Instead, she states in her brief:

> "There was no evidence presented by either party as to the exact number of damages that would be required to correct the various areas that the arbitrator found Pillar to Post should have noted and investigated. The only evidence on which the arbitrator could have found four hundred seventy-six dollars ($476.00) in damages is contained in the Inspection Agreement that Pillar to Post provides and Pillar to Post attorney's discussion of that amount in arbitration."

Plaintiff provides no explanation how her failure to present evidence regarding the cost to repair the items the arbitrator determined the home inspector failed to report—the potential water damage in the master closet and the suspected fresh paint on the garage ceiling—helps her cause.

¶ 42    Based on the arbitrator's award in this case, we have no reason to believe the arbitrator failed to comply with the trial court's order which found the provision of the inspection agreement capping plaintiff's damages was unconscionable and unenforceable. The arbitrator made no mention of a cap on plaintiff's damages. Further, the arbitrator awarded plaintiff less money ($450) than what would have been the cap on plaintiff's damages ($476) had the court not found the cap was unconscionable.

¶ 43    Although we sympathize with plaintiff's situation, based on the arguments she presented to this court, we do not find the trial court erred in enforcing the arbitration award because plaintiff failed to establish grounds for vacating it.

¶ 44                          D. Motion to Supplement the Record

¶ 45    Finally, we note Pillar to Post filed a motion to supplement the record in this case pursuant to Illinois Supreme Court Rule 608(a) (eff. July 1, 2017) after all the briefs had been filed. This court took the motion with the case. At issue is an estimate from a structural engineer, which according to the motion is a "key piece of evidence" that "was not included in the record despite the fact that it was produced by [plaintiff] in discovery and at the underlying arbitration hearing." We note Pillar to Post does not state this piece of evidence was presented to the trial court during its consideration of whether to enforce the arbitration award. Because this court has already determined the trial court did not err in enforcing the arbitration award based on the arguments presented by plaintiff, we deny Pillar to Post's motion to supplement the record as moot.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated, we affirm the trial court's judgment.

¶ 48    Affirmed.